ELLINGTON SUGARS, INC.
v.
TEXAS & PACIFIC RY. CO.

---

(May 7, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Railroads—Par. 58 80.**

A railroad company is not responsible in damages when its cars run over a person unless it is proven that its employees were guilty of negligence.

2. **Louisiana Digest—Railroads—Par. 80; Negligence—Par. 42.**

The testimony of four employees of the railroad that whistles were blown will prevail against the negative testimony of two by-standers that they were not.

Appeal from the Twenty-fourth Judicial District Court for the Parish of St. Charles. Hon. L. Robert Rivarde, Judge.

Action by Ellington Sugars, Inc., against Texas and Pacific Ry. Co.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Milling, Godchaux, Saal and Milling, of New Orleans, attorneys for plaintiff, appellant.

John E. Fleury, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. The plaintiff claims $323.60 for the loss of a mule and wagon run over by the train of the defendant company.

It alleged that it was the owner of a sugar plantation in the Parish of St. Charles, known as "Ellington Sugar Plantation"; that the railroad of the defendant company runs through said plantation; that on the morning of March 13, 1924, at about 7.30 o'clock, one William Wallace, employed by plaintiff as water boy, was driving a water cart and mule owned by plaintiff across the railroad tracks of the defendant at a private roadway connecting the fields of plaintiff on both sides of the railroad; that while in the act of crossing said railroad, William Wallace was struck by a fast passenger train operated by defendant, and was instantly killed, and the mule drawing said cart was also killed,

and the cart itself was demolished; that at the time of the collision there was an unusually dense fog spreading over the railroad and the surrounding country by reason of which it was impossible for William Wallace to see clearly at a distance of more than 25 feet, and to see at all beyond fifty feet; that the fog also deadened the sound made by the approaching train; that the engineer of the train did not blow his whistle, nor ring his bell, nor give any other audible signal of the approach of the train, so that William Wallace was unable to ascertain the approach of the train; that these private roadways connecting the fields on one side of the railroad with the fields on the other side of the railroad were built by the railroad and are essential to the operation of the plantation and are well known to the operators of the railroad; that at the time of this accident planters were engaged in planting their crops and their laborers were making regular trips across said railroad tracks as was well known to the railroad operators, who should have reduced the speed of their trains so as to be able to stop within such distance as they could see, and that their speed at the time of the accident was dangerous; that plaintiff was damaged to the following amount:

Value of mule _____$200.00
Value of Cart_____ 75.00
Expense of burying Wallace _____ 48.60
                                         ———
                                      $323.60

That the accident was due entirely to the fault of the railroad and that William Wallace in no manner contributed to it.

The defendant admitted that the plaintiff was the owner of the Ellington Plantation, and that its railroad runs over it; it admitted that its fast passenger train struck a mule drawing a water cart; but denied all the other allegations of the petition; it further averred that the accident was caused by the fault and negligence of plaintiff's employee.

There was judgment for defendant and plaintiff has appealed.

A. A. Derbes, bookkeeper for the plaintiff, testified that this private road was used to go from one side of the railroad track to the other; that the employees of the plaintiff go backward and forward across the track; that trains pass there frequently, both freight and passenger, at certain particular hours of the morning and evening on schedule time.

Thomas Williams, a laborer, testified that he was about an acre from the scene of the accident plowing; it was foggy; he could not see half an acre away; could not see the train; the train did not blow its whistle before, but only afterwards; he heard the crash; a water cart makes "a lot of noise"; you can hear the whistle when the cart is rolling; he saw the accident; he was about three squares from the road on which the cart ran; Johnson was with him; the first thing that attracted his attention was the rumbling of the water cart; he heard the train coming; "she was running"; it was making a rumbling noise, not very loud, but they could hear it about two acres away; he did not hear the bells ringing either; the train did not blow the whistle; when the cart passed, it was the usual time for having breakfast; it was also the usual time for the train to pass along; he saw the train pass every morning; he does not know how old the man was who drove the truck; he found him there when he began working there about a year before; everybody on the plantation knew that the train passed at that hour, a fast passenger train; the water cart makes so much noise you cannot hear; if the train blew

while you were driving the cart you would hear it; laborers usually tell the time by the train passing; they, call that train the "cannon ball"; it usually passes about breakfast time.

John Johnson, who was with Williams, testified that he heard the rumbling of the train as it left Luling. In other respects his testimony was practically the same as Williams.

The plaintiff produced no other witness.

The defendant produced: 1st, W. E. Bohler, fireman on the morning of the accident; before passing Luling station they gave four blasts of the whistle followed by two blasts immediately after; while passing the station he blew a road crossing whistle, that is, two long blasts and two shorts; when they passed by the west switch, he blew another road crossing whistle; when they passed the Ellington Sugar Mill he blew two whistles for a road crossing, on account of the heavy fog; the bell was ringing continuously; it is operated by air from the cab; the distance between the Luling station and the place of the accident is about three-quarters of a mile; there was a headlight burning; after the collision they stopped between 500 and 800 feet; the train consisted of three Pullmans, one dining car, two baggage cars, and a mail car; the train was traveling at maximum speed, 50 miles an hour, the usual speed for that train; it was the first stop after leaving Donaldsonville; it was the usual time for making that crossing; the train is nearly always on time.

2nd, W. F. Legg, the conductor on the train, gave the same testimony as to the whistles at Luling and at road crossings; as the morning was foggy the engineer gave additional whistles at road crossings which he was not obliged to do as a matter of precaution; between Edgard, St. John the Baptist, and Ellington there are 15 or 20 crossings and as many little plantation crossings.

3rd, S. A. Presnell was locomotive engineer on the train that collided with the cart; has been engineer since 1886, forty-two years; the train was a non-stop very fast through train; on March 25th at 7.30 a. m., he "crippled badly an old colored man"; the accident happened about three-quarters of a mile east of Luling station; he whistled at Luling and at the crossing of the Old Spanish Trail, 150 yards from there; he blew again at the Ellington Sugar house another road crossing signal consisting of two long blasts followed by two shorts in an interval of five to seven hundred feet; a few seconds after he had completed this signal, he heard the crash of striking the wagon; he was running at the rate of 40 to 50 miles an hour; the bell also was ringing automatically, an air bell ringer, through Luling, and until this accident occurred; he stopped within the length of the train, between 800 and 1,000 feet; after Donaldsonville they stop only at the Southern Pacific Railroad crossing at Avondale and then at Gretna; the cart was struck by the left side or the fireman's side of the train; there is no whistling board to be observed between Luling and the old Star Plantation; at the point where the accident happened the track is straight and level and the road crosses the track at right angles, practically on a level, the track is not higher than the surrounding country; it was foggy, very foggy; between the time he blew for Luling and the time of the accident he blew fifteen times, in the space of about a mile, in intervals of about 200 to 300 yards; from Luling to the accident he blew ten times; there are no restrictions as to speed unless there is something wrong with the track that would endanger

the passengers, such as a soft track from rains; there are no restrictions as to weather conditions, rain or fog; it is impossible to see the track in a dense fog, even with a headlight; in a light fog you may see the track 50 or 100 feet or more; on the morning of the accident it was just like a wall, you could see absolutely nothing.

4th, B. D. Brannon was a railroad section foreman on March 25, 1924, for the defendant, located at Luling; at the time the accident happened he had put his car on the passing track, about 900 feet east of Luling; the tool house is on the Ellington Plantation; the train blew at Luling and also for the Old Spanish Trail and for Paul Maillard Road; the bell was ringing when it passed by, he saw the old negro cross the track "lots of times"; he could see the headlight of this train coming, not over 800 feet.

The plaintiff charges the defendant with negligence; 1st, in operating its train at full speed fifty miles an hour through a section of the country where it knew that there were many people and vehicles crossing the track in a fog so dense that it was impossible to see or be seen for any appreciable distance.

I.  In support of its position plaintiff relies exclusively upon the case of Peart vs. Orleans-Kenner Co., No. 10,832, decided by this Court on March 12th last.  He quotes no other authority.  That case differs materially from the one before us.  In that case the defendant was approaching a regular station, upon a recognized highway crossing on an elevated road, and did not blow any whistles, nor ring any loud bells.  Besides it was an urban train composed of one coach, running 16 miles an hour, making but a slight noise.  While in the case before us, the crossing was a mere plantation private road where none but few employees crossed, on a level road with a heavy locomotive hauling seven coaches, running with a rumbling noise, blowing whistles and ringing bells.

All the questions involved in this case were examined and determined with detail and with authorities in the case decided by this Court on May 10, 1919, entitled Jefferson Planting Co. vs. Morgan Rrd., No. 7520.  We annex the opinion in that case as a part of this opinion.  We find no reason to change our conclusion.  It would have been difficult to have prepared a more authoritative precedent.

II.  "In failing to give warning signals commensurate with the extreme danger of the situation."

The only testimony in support of that allegation is that of the two laborers sitting on the field, one acre from the accident occupied at eating their morning meal.  They did not hear the train coming, nor the whistles, nor the bells.  But there was no reason why they should.  The passing of the train was to them a matter of daily occurrence and not calculated to attract their attention.  Besides, their testimony, at best was negative and entitled only to weight inferior to positive testimony.  On behalf of defendant, the testimony of four witnesses establishes that the locomotive engineer blew a dozen whistles and rang the bell continuously for a distance of nearly a mile before he struck the wagon, irrespective of the noise made by a locomotive and seven cars running at 50 miles an hour.  It is true that the defendant's four witnesses are all employees of its railroad, but so are plaintiff's two witnesses farm laborers of the plaintiff.  See on credibility of defendant's witnesses Toups vs. Morgan's La. & Tex. R. R. & S. S. Co., 4 La. App. 141-142.

This case was decided by a learned judge "to the manner born." He knew the conditions better than we do, and his judgment is entitled to more than ordinary weight.