ELLIS, Judge.
On January 12, 19S2 at about 7:30 P.M, plaintiff’s husband was riding in a half ton truck owned and being driven by one Hilton Laborde, within the limits of the town of Palmetto, Louisiana, which has a population of 457, when the truck in which they were riding was struck by a train of the Texas and Pacific Railway Company, killing both occupants. Plaintiff thereupon filed suit against the defendant individually and on behalf of her minor child for damages as the result of the death of her husband, and requested and was granted a trial by jury, which rendered a judgment in fav- or of the plaintiff individually for $5,000 and on behalf of her minor child for $10,000. The defendant has appealed.
Plaintiff contends, first, that the employees of the defendant company were negligent in that they did not blow the whistle or ring the bell on the train until approximately the moment of impact or thereafter, and, second, that the train was being operated an excessive speed and while they contend that there was no contributory negligence on the part of Leger, *777 plaintiff’s husband, who was an occupant or guest in the truck, in the alternative it is contended that the defendant is still liable under the doctrine of the last clear chance.
The defendant denies any negligence on its part or that the last clear chance doctrine is applicable under the facts, and in the alternative, that contributory negligence is a bar.
It is shown that the tracks of the defendant company run in an east-west direction and that on the date of the accident a freight train containing some 82 cars was proceeding east toward Melville and New Orleans, and that the truck was being driven by its owner, Laborde, and that riding with him at the time was plaintiff’s husband, the latter having asked Laborde to push his motor vehicle which had a dead battery. The truck was driven from Laborde’s home, which is located on what is known as the Sand Pit Road, in a westerly direction to where it intersects Bayou Jack Road which ran north and south, and at this road Laborde turned to his left and proceeded south, and without stopping drove up on the tracks of the defendant company and the rear end of his truck was struck by the engine.
The testimony, as well as pictures and a map introduced in evidence, show that there is a house located 48 feet west of the Bayou Jack Road and 110.4 feet from the north rail of the main line. The fence surrounding the house is 85.4 feet from the north rail of the main line and for a distance of 991 feet, that is, to the next crossing from the one at which the accident took place, there was no obstruction whatsoever. The map does show a small building 50’ x 28' which is 26.3 feet north of the north rail of the main line, and from this latter point to what is known as the Budden Crossing, a distance from the Bayou Jack crossing where the accident happened of over 2,000 feet, there is no obstruction. In other words, as soon as the occupants of the truck passed the house described, there was an unlimited vision to the west down the tracks. There is no question but that the light was burning on the locomotive, and that the truck failed to stop for the railroad crossing.
Plaintiff placed on the stand Davis LeBoeuf, the only witness testifying positively at one point in his testimony that the whistle on the train was not blowing, however, after stating, “That is my positive statement,” he was asked on cross-examination if it was not a fact that he was not paying attention and “that you don’t know whether it was blowing or not, that it might have been blowing before it got to' the crossing,” and his answer was, “It possibly might have been but I didn’t hear it.” This witness, together with his wife, had left his home on the Sand Pit, Road and was walking to the home of the deceased Laborde, which was further east on the road, when Laborde and plaintiff’s husband passed in the pickup truck. It is his testimony that he watched the truck then until it got to the Bayou Jack Road and turned in a southerly direction and that he saw it slow down for the crossing and heard the collision. According to the testimony, the distance was 646 feet from the railroad crossing on the Bayou Jack Road to its intersection with the Sand Pit Road, and the witness LeBoeuf was 502’ east on the Sand Pit Road at the.time he says he saw the truck slow down for the crossing and heard the collision. His testimony, at best, on the question of negligence of the defendant in the operation of its train in failing to blow the whistle, is weak, and although he was more than 2,000 feet away, he estimated the speed of the train as terrific.
The testimony of all other witnesses for the plaintiff was of a negative character, that is, that they were not paying much attention or they didn’t ■ hear the whistle or the bell, but they do not testify positively that the whistle was not .blowing’nor the bell ringing. ■
There is some testimony of an estimate of the speed of the train by a witness for plaintiff of 50 miles an hour because she *778 thought that they usually went about that speed through Palmetto.
On the other hand we have the positive testimony of the engineer, fireman and the head brakeman, all of whom were on the engine of the train, to the positive effect that the engineer started blowing the whistle and ringing the bell before he got to the Budden Crossing and continued to blow for the next three crossings, the last of which was Bayou Jack where the accident occurred. Plaintiff makes much of the fact that the conductor and brakeman, who were riding in the caboose, 82 car lengths or approximately 3500 feet from the engine, did not hear the whistle or the bell. Their explanation, which is reasonable, was that they were too far away and the noise made by the train prevented their hearing either. There is no reason shown by the record as to why the testimony of the employees of the defendant should not be taken as true and should not be given superior weight to that of plaintiff’s witnesses, which was all of a negative character. The same comment is true as to the speed of the train. The train crew, including the conductor, testified positively that the train was going -approximately 38 miles an hour, that it was their duty to know the speed of the train and that they had checked it. Counsel for defendant, although he has cited many cases, cites three that are particularly applicable to the testimony of the plaintiff’s witnesses on the question of whether or not the whistle blew and the bell rang, and the weight to be given to such testimony.
In one, Hutchinson v. Texas & N. O. R. Co., LaApp., 33 So.2d 139, 142, the Court said:
“In ’ commenting on the negative testimony of plaintiff’s witnesses, who reside near the tracks, Judge Fruge very aptly quoted from the case of Handy v. New Orleans Public Service, 10 La.App. 72, 120 So. 271, 272, as follows: ‘People not engaged in the operation of trains but living near crossings over which fast trains daily pass, become so accustomed to the whistling, and the ringing of the bell, that ordinarily, unless purposely listening, they pay no attention to such things and do not consciously hear them.’ ”
Again in Henderson v. Missouri Pacific R. Co., 15 La.App. 196, 131 So. 586, 588, the Court said:
“If we hold that the proper crossing signals were not given, we must base that holding upon purely negative testimony, that is, upon the testimony of those who did not hear them. Not only that, to so hold would be, in effect, at least, to say that the three members of the train crew deliberately falsified and for no suggested reason other than that they are employees of the defendant company. The personal character and veracity of these men are not assailed. On the contrary, it is shown that they have been intrusted with the operation of defendant’s trains for many years. We cannot assume that such men would be willing to perjure themselves to win a lawsuit for their employer.”
In Ellington Sugars, Inc. v. Texas & P. R. Co., 8 La.App. 271, the Court said:
“The only testimony in support of that allegation is that of the two laborers sitting on the field, one acre from the accident occupied at eating their morning meal. They did not hear the train coming, nor the whistles, nor the bells. But there was no reason why they should. The passing of the train was to them a matter of daily occurrence and not calculated to attract their attention. Besides, their testimony, at best was negative and entitled only to weight inferior to positive testimony.”
The speed of 38 miles per hour through the town of Palmetto under the circumstances was not excessive and it is proven that the whistle was being blown and the bell ringing, and there was no reason why both occupants of the truck should not have seen and heard the train approach *779 ing except that they did not look or listen. There was nothing to prevent their seeing it as they had an open and practically unlimited view. While there is no negligence shown on the part of the defendant company in the operation of its train, we will discuss contributory negligence and the doctrine of last clear chance as applicable to this case.
Counsel for plaintiff, on the question of contributory negligence of plaintiff’s husband, as an occupant of the truck, cites Peterson v. New Orleans Ry. & Light Co., 142 La. 835, 77 So. 647, and Martin v. Yazoo & M. R. Co., La.App., 181 So. 571, 582. In the Peterson case the Court found that the motorman was negligent in not reducing his speed of his car so as to be able to avoid colliding with a truck crossing the track slowly in front of the car in plain view and at an apparently safe distance, and the Court stated that it could not understand why the motorman did not reduce his speed in time to avoid the collision. The Court in fact found no negligence on the part of the operator of the truck but went on to discuss if there was contributory negligence. We do not consider this case applicable.
In the Martin case, supra, the Court held:
“We are of the opinion that it is the independent duty of a passenger or guest, when the vehicle in which he is riding is about to traverse a railroad crossing, to use ordinary, reasonable care for his own safety; that the care and precaution required of him is not as great as is that required of his host, and that the passenger or guest has the right to rely upon the driver to take the necessary precautions for his own safety and his safety until such time as the guest or passenger realizes by observation or otherwise, or should have realized by the use of ordinary care, that the driver is oblivious of the perils and dangers ahead or that he is disregarding them. This is particularly true when the guest or passenger knows that the driver is familiar with the location and the hazards surrounding it. Until such time as the actions of-the driver indicate negligence, and the passenger or guest by the exercise of ordinary care has or should have discovered the perils confronting him, he is under no duty to enter a protest.”
Under the above ruling, both the driver and plaintiff’s deceased husband were guilty of contributory negligence.
Other cases dealing with contributory negligence of a guest and cited by counsel for defendant are the following, together with their holdings:
Murray v. Yazoo & M. V. R. Co., La.App., 183 So. 543, 545:
“Plaintiff was guilty of independent contributory negligence in his failure to keep a proper lookout for danger ahead and in his failure to observe the tank car across the road and warn the driver of the danger. Hq was in equally as good, if not better, position to see the obstruction in the road as the driver himself, and -he cannot be excused for his failure to see such an apparent danger and warn the driver of it mere- ' ly because he was a passenger in the car.”
Ashy v. Missouri-Pacific Railroad Co., La.App., 186 So. 395, 397:
“The trial judge states that while under our jurisprudence a guest is not held to the same degree of care and diligence to which the driver of an automobile is held, nevertheless the guest is accountable for plainly apparent hazards, * *
Alanza v. Texas & Pacific R. Co., La. App., 32 So.2d 341, 344:
■■“Either of them could have seen the approaching' train for a distance of miles to the south if they had looked * * *. The most casual glance in a southerly direction by either plaintiff or the driver of the truck would have disclosed a view of the approaching train. * * *
*780 “It is well established that there is an independent duty on the part of a passenger or guest in a vehicle about to traverse a railroad crossing to use ordinary and reasonable care and precaution in the interest of his own safety. Martin v. Yazoo & M. R. Co., La.App., 181 So. 571; Lockhart v. Missouri-Pac. R. Co., La.App., 153 So. 577.”
Lockhart v. Missouri-Pacific Ry. Co., La.App., 153 So. 577, 579:
“ ‘But an occupant of a vehicle may not abandon the exercise of his own faculties and entrust his safety absolutely to the driver, regardless of the imminence of danger, or the visible lack of ordinary care on the part of the driver to avoid harm. It is his duty to exercise ordinary care to protect himself from known dangers and perils which the attendant circumstances suggest.’ ”
Aaron v. Martin, 188 La. 371, 177 So. 242, 243, 246:
“ ‘It is the duty of one riding in an automobile with another, on approaching a railroad crossing, to use ordinary care for his own protection and safety by looking or lisfening a reasonable distance from the railroad tracks for the approach of a train, so that he can, by the exercise of ordinary care, inform the driver of the approaching train in time to prevent a collision’”.
O’Connor v. Chicago R. I. & P. Ry. Co., La.App., 40 So.2d 663, 665:
“We do not think there is any question but that the testimony establishes the fact that the driver of the truck and the guest Walker were grossly negligent. The evidence shows that the windows of the truck were closed and the truck did not stop nor did it slow down or even give any indication of stopping or slowing down for the railroad track even though the whistle was blown and the bell rung. There is nothing to even indicate that Walker warned O’Connor. * * * ”
We see no need to further discuss the plea of contributory negligence other than to say both parties in the truck were guilty of gross contributory negligence.
On the question of last clear chance, the testimony shows that the fireman, who was riding on the left-hand side of the train, noticed the approach of the truck when it was approximately 125 feet from the crossing and the train was approximately 300' feet. The fireman testified that he did not anticipate, and there was no reason for him to do so, that this truck which was traveling slowly toward the track would not stop for the crossing or would not see the train which was in plain view with the bright head light burning, the whistle blowing and the bell ringing, but that when he was approximately 50 feet from the crossing he then realized that the truck which was crossing the passing or switch track, shown to be 15.4 feet north of the main line, was not going to stop and he immediately warned the engineer who in turn, as fast as humanly possible, applied full brakes to the train but could not avoid striking the truck. The train came to a stop within 1200 feet, which the testimony shows was a good stop.
We are not impressed with the argument of plaintiff that the excessive speed was evidenced by the fact that the truck came to rest some 60 feet from the crossing, as it would possibly have been knocked further by this heavy freight train at this speed had it been struck square rather than just on the rear end.
There are many cases which establish the jurisprudence to the effect that those in charge of railroad trains may presume that an individual or vehicle approaching a crossing will stop in time to avoid an accident, and the crew is justified in assuming that each car is going to stop and are, therefore, not required to bring the train to a stop or attempt to bring it to a stop unless there is reason to believe that the driver *781 of the approaching car is oblivious of the on-coming train or for some other reason does not intend to stop. Wright v. Texas & N. O. R. Co., La.App., 19 So.2d 894; Bordenave v. Texas & N. O. R. Co., La. App., 46 So.2d 525; Levy v. New Orleans & N. E. Ry. Co., La.App., 20 So.2d 559; Calvert Fire Insurance Co. v. Texas & Pacific R. Co., La.App., 55 So.2d 693; Stelly v. Texas & N. O. R. Co., La.App., 49 So.2d 640; Bailes v. Texas & Pacific R. Co., La.App., 59 So.2d 509.
Plaintiff appears to rely greatly upon the case of O’Connor v. Chicago R. I. & P. Ry. Co., supra, however, the facts in that case are entirely different in that the negligence and peril of the occupants of the truck were discovered by the train crew in time to have prevented the accident and, therefore, they had the last clear chance, and having failed to act so as to avoid the accident, this Court rendered a judgment in favor of plaintiff.
Under this doctrine the facts must show that the defendant company discovered the peril of the occupants of the truck in time to have avoided the accident and failed to do so. Under the facts in this case, the operator of the train had no reason to anticipate that the truck would not stop until the train was some 50 feet from the crossing, and as soon as the peril of the occupants of the truck was discovered everything was done by the train crew to avoid the accident. There was no last nor clear chance for the train crew to avoid the accident after the perilous situation of the occupants of the truck became apparent.
We are, therefore, of the opinion that the plaintiff has failed to prove that the employees of the defendant company were negligent in the operation of the train. In fact, the record shows that the train crew was free of negligence, while, on the other hand, plaintiff’s husband as well as La-borde, the driver of the truck, were both guilty of contributory negligence, and it is not shown that the defendant is liable under the doctrine of last clear chance. We realize that this case was tried by a jury, however, when its verdict is manifestly erroneous, it is the duty of the appellate court to reverse it.
It is therefore ordered that the judgment rendered in this case be reversed and plaintiff’s suit individually and on behalf of her minor child be dismissed at her cost.