CULPEPPER, Judge ad hoc.
Plaintiff sued defendant for $5,257.34 representing damages sustained when plaintiff’s farm tractor was struck by one of defendant’s trains at a private crossing located on plaintiff’s plantation. Defendant answered, denying any negligence on its part and alternatively alleging contributory negligence on the part of plaintiff’s tractor driver. In addition, defendant urged a reconventional demand for damages to its train, which demand was dismissed on a plea of prescription. After trial on the merits, the lower court found defendant free of negligence and concluded that the accident was caused solely by the negligence of plaintiff’s tractor driver. From a judgment dismissing plaintiff’s suit, ■ he has taken this appeal. Defendant has not answered the appeal.
The facts show that on November 13, 1958, between 1:00 and 2:00 o’clock p. m. on a clear day, plaintiff’s employee was driving a large farm tractor pulling two sugarcane wagons toward the said crossing. The seat of the tractor was five feet and the driver’s head seven or eight feet from the ground. The driver testified as follows : as he approached he saw defendant’s engine two or three blocks from the crossing and thought that he had time to cross; he slowed down and shifted into low gear in order to climb the slight grade up over the tracks, but he did not come to a complete stop; as the front wheels of the tractor crossed the first rail, he saw that the engine was pushing a string of cars and the leading “flatcar” was a distance of only ten to twenty feet from the crossing; realizing that a collision would occur, he jumped free of the tractor in order to save his life; *95 he had not previously seen' the “flatcars” being pushed in front of the engine because of high weeds and bushes along the right of way; he did not hear the train whistle until immediately before the impact. On the other hand, defendant’s witnesses, including two brakemen, the conductor, the engineer,' the fireman and the flagman from defendant’s train, clearly established by their testimony that actually the engine was pushing nine cars, each 40 feet in length. The first eight immediately in front of the engine were gondolas, used for hauling coal, gravel, sugarcane, etc. In the lead was a large tank car, orange in color, and eleven or twelve feet in height. The testimony of these witnesses shows that when the engine reached the whistle board, from 1000 to 1300 feet from the crossing, the whistle started blowing crossing signals consisting of long blasts and continued to do so until about the time of impact. Mr. Callignori, the brakeman riding on the front end of the tank- car, testified: as they approached he could see 110 to 115 feet from the crossing; he first noticed the tractor on the road 35 or 40 feet from the track and proceeding at a speed of about '15'or 20 miles per hour; when the tractor failed to stop, he realized that a collision would occur so he gave a “washout signal” to the engineer who immediately applied the emergency brake, but the train was unable to stop in time to avoid the collision. The other members of the train crew were unable to see'the tractor as it approached because they were on the opposite side of the train, but they all heard the whistle and felt the emergency brake applied. The train was going 18 to 20 miles per hour.
The trial judge decided there was no negligence on the' part of the defendant. He reasoned that this being a private crossing, no markers or signals were required as in the case of public crossings. LSA-R.S. 45:562. He reasoned further that even if there were weeds on the right of way sufficient to obstruct the vision of the tractor driver, this does not constitute negligence per se but requires only the exercise of caution commensurate with the situation. Rachal v. Texas & Pacific Railway Company, La.App., 61 So.2d 525; Guidry v. Texas & N. O. Railway Company, La.App., 56 So.2d 611; Daughdull v. Texas & N. O. Railway Company, La.App., 20 So.2d 644. In the instant case the trial judge found that even if the' crossing was dangerous because of weeds obstructing the view of travelers .approaching it, the train crew had exercised caution commensurate with the situation by blowing the whistle in a manner sufficient to give an adequate warning.
In our opinion, this case can he decided on the issue of contributory negligence. Assuming for .the sake of argument that the train .crew was negligent in failing- to give a- sufficient warning by whistle, bell or otherwise, and assuming the weeds and bushes were sufficiently high that the tractor driver could not see the gondolas or the tank • car, but • could only see- the engine-, 360 feet to the rear of the front end of the train, it is our opinion the driver still must be held contributorily negligent for attempting to cross.ahead of so near an approaching train of whose presence he was aware. The general rule in this regard is stated in 75 C.J.S. Railroads § 799, p. 70 as follows:
“A person on a highway who approaches a railroad crossing is required to use.reasonable prudence and exercise reasonable care to ascertain whether a train is. approaching the crossing. It does not always constitute negligence for a person- to attempt to make -a crossing ahead of an approaching train, and whether he is negligent in attempting to do so depends on all the circumstances of the particular case. As a general rule, where a person approaching a railroad crossing sees or knows of an approaching train, or by the exercise of reasonable diligence could see -or know of its approach in time to prevent an accident, it is his duty to -stop until the *96 train has passed, or if he is already on the track when he discovers the approaching train it is his duty to exercise reasonable care to leave it, and if he fails to do so, and without reasonable grounds for so doing attempts to cross in front of an approaching train, he is guilty of contributory negligence.
“This rule applies although the person approaching the crossing believes that he can cross in safety, but miscalculates his danger, for he cannot indulge in nice calculations as to whether he may barely escape injury nor may he take reckless chances and be free from contributory negligence. However, it has been held that the traveler does not, as matter of law, assume the risk of mistake in his calculation if by reason of the approach of the train at an excessive or negligent rate of speed a collision occurs. If the situation is such that the traveler is compelled by an imperative necessity due to the situation in which he is placed to make the attempt to cross the track, or if it reasonably appears that he will have time to do so, it is not necessarily contributory negligence to attempt to cross.”
Louisiana cases applying the above quoted general rule of law are Russo v. Texas & Pacific Railway Company, 15 La.App. 4, 131 So. 70; Leger v. Texas & Pacific Railway Company, La.App., 67 So.2d 775; Khoury et al. v. Louisiana Western Railway Company, 140 La. 369, 72 So. 998.
In the instant case the tractor driver admittedly saw the engine two or three blocks (600 to 900 feet) from the crossing. By the time he reached the track, the engine was only 380 feet from the crossing, under the tractor driver’s own testimony that as he reached the first track he saw the leading car 10 to 20 feet away. With the engine approaching from such a short distance at a speed of 18 to 20 miles per hour, we do not think the tractor driver used reasonable care in driving this large farm tractor, in low gear, pulling two cane wagons up and over the railroad crossing. He was very familiar with this particular crossing, having traveled that way four or five times a day during his employment with plaintiff, and if his vision of the approaching train was obscured, as he contends, reasonable prudence would certainly have required that he not indulge in such a nice calculation. This was the substantial finding of the trial judge as to the facts. The jurisprudence is too well settled to necessitate citation of authority that the finding of fact by the trial judge will not be disturbed unless manifestly erroneous. Certainly there is no such manifest error revealed by the record in this case.
In this court the plaintiff argues strenuously that the instant case falls within the doctrine of McFarland v. Illinois Central Railroad Company, La.App., 122 So.2d 845 and Simon v. Texas & New Orleans Railroad Company, La.App., 124 So.2d 646, that the presence of brush, trees and undergrowth on the right of way obstructing the view of motorists approaching a crossing, constitutes a trap requiring a very high duty of care on the part of the train crew. The cited cases are clearly distinguishable from the present matter because there the motorists were not shown to have seen the approaching trains, whereas, in the instant case plaintiff’s tractor driver admittedly saw the engine approaching and negligently tried to cross in front of it. Furthermore, it is our opinion that plaintiff has failed to prove by a preponderance of the evidence that the weeds on the right of way were so high as to prevent the tractor driver, whose head was seven or eight feet above the ground, from seeing the approach of this large orange tank car, eleven or twelve feet in height, as it approached the crossing. Despite the tractor driver’s testimony to the contrary, the evidence shows conclusively that this tank car was in the lead. Various estimates of the height of the weeds by defendant’s witnesses run from two or three feet to seven or eight feet. Plaintiff testified that *97 the weeds and hackberry bushes were ten to twelve feet tall. The tractor driver did not estimate the height of the weeds. The flagman on the front of the tank car testified positively that “I could see about 110 to 115 feet from the crossing. I saw a tractor approaching from the north or the river side. The tractor at that time when I saw it was approximately 35 or 40 feet away from the crossing.” Of course, if this brakeman could see the tractor approaching on the road, then the driver thereof was able to see the tank car. Under the law, the tractor driver is required to have seen what he should have seen. Clearly, he should have seen the tank car approaching on the track in time to stop this farm tractor pulling two cane wagons.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.