No. 3910

Second Circuit

———

HENDERSON v. MISSOURI PAC. R. R. CO.

———

(December 23, 1930.   Opinion and Decree.)

———

Frank W. Hawthorne and W. Dan Files, of Bastrop, attorneys for plaintiff, appellant.

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for defendant, appellee.

ODOM, J.   On June 16, 1928, a collision took place in the daytime at a public crossing in a rural section of Morehouse parish between one of defendant's passenger trains and an automobile in which plaintiff was riding. He was injured and prosecutes this suit to recover damages.

He alleges that he was a passenger in the automobile which at the time was owned and driven by one B. J. Greenberry and that neither he nor the driver of the car was guilty of any fault or negligence, but that the accident and resulting injury were due solely to the fault and negligence of the defendant company, the specific acts of negligence charged being: (1) That the crossing where the collision occurred was dangerous and negligently constructed in that approach to the same is up a short incline; (2) that the Louisiana stop sign at the crossing is placed in such manner as to obstruct the view of a train ap-

proaching from the south; (3) that the defendant negligently permitted weeds and bushes to grow up along the right-of-way to the height of six feet so that it was impossible for one approaching the crossing to see the train on the track, and (4) that the train crew, before reaching the crossing, did not ring the bell, blow the whistle or give any other warning signal whatever.

The defendant in answer admitted that its train collided with the car in which plaintiff was riding and admitted that he was injured to some extent but denied generally the other allegations, and affirmatively alleged that plaintiff, while not the driver of the car, was guilty of gross independent negligence and in the alternative pleaded contributory negligence in bar of his recovery.

The trial judge rejected plaintiff's demands, ordered his suit dismissed, and he prosecutes this appeal.

This is a tort action founded upon negligence and if the defendant company was guilty of no negligence there can be no recovery and the burden was upon plaintiff to prove negligence on the part of defendant as a necessary element of his cause of action. This point is conceded by counsel for appellant.

The only charge of negligence against the railroad company urged by counsel for appellant in this court is that the train approached the crossing without the sound of bell or whistle. All others have been abandoned.

Act No. 12 of 1924, page 16, provides that every railroad company shall cause each locomotive engine used to be equipped with a bell and a steam whistle "and shall cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or municipal street, and the bell shall be kept ringing or the whistle shall be kept blowing continuously until said crossing is passed." Section 1.

It goes without saying that neglect to comply with this mandatory duty on the part of the railroad company is negligence per se. But in this connection we take occasion to say that in order to comply with the requirements of the above cited act it is not necessary that the bell be rung and the whistle blown at a distance of 300 yards from the place where the railroad crosses the highway, nor is it necessary that the bell be kept ringing and that the whistle be kept blowing continuously until the crossing is passed. The act does not so provide. All that is required by the act is that either one or the other warning signal shall be given at a distance of 300 yards from the crossing and that either the bell shall be kept ringing or the whistle kept blowing continuously until the crossing is passed. Either warning signal suffices. Both are not necessary. This must be kept in mind in considering the testimony in this case touching the only charge of negligence now urged.

In support of his allegations that defendant's train approached the crossing without the sound of bell or whistle, plaintiff testified that the driver of the car in which he was riding stopped it before going upon the track and that he, plaintiff, looked both ways, up and down the track, that he listened and that he neither saw nor heard the train. We readily accept as true his statement that he did not see or hear the train, because if he did, it is inconceivable that he would have permitted the driver to go upon the track immediately in front of the oncoming train as he

did without making some protest or giving some warning, and he says he did nothing and said nothing to the driver until the front wheels of the automobile had crossed the first rail of the track, at which time, the testimony shows, the train was so close that a collision was inevitable. But we cannot believe that he either looked or listened. This crossing is in a rural section where the land is level and open and the railroad track is practically straight. There is nothing of any character or description either on the right-of-way or near it within a mile of the crossing to obstruct the view. It is undisputed that one standing at or near the crossing on either side could see the railroad track either way for at least a mile. Therefore, the fact that plaintiff did not see the train until the automobile got up on the track is proof sufficient that he did not look for it until then.

Now the fact that plaintiff was mistaken or not candid when he said he looked leads readily and strongly to the conclusion that he was also mistaken when he said he listened. We think he did neither, and, therefore, attach no importance to his testimony that the train approached without warning signals.

Plaintiff called three other witnesses in support of this allegation of negligence, James Harkness and Eugene Gray, both young white men, and Cora Hawkins, a colored woman. Harkness and Gray were both standing on the front porch of the latter's residence which is between a half and three-quarters of a mile from the crossing where the collision took place. Harkness says the bell was not rung and that the whistle was not blown. Gray does not say that there was no bell or whistle but says he heard none. The woman, Cora Hawkins, was in a house a quarter of a mile away and says she heard the noise of the train from the time it left Collinston, which is two miles away, and that the whistle was not blown and the bell was not rung until the train hit the car.

As against the above there is the testimony of the train crew, James McCarthy, the engineer; J. M. McDonald, the fireman, and T. A. Brown, the conductor. The engineer and the fireman both say that the automatic bell ringer was turned on as the train left Collinston two miles south of the crossing and that the bell rang continuously until after the collision. The engineer in explaining why he left the bell ringing over the entire distance said that there was a private crossing on the outskirts of Collinston and that cattle grazed on the right-of-way in that vicinity. The whistle post is one-quarter of a mile from the crossing and the engineer, fireman and conductor each say that the crossing whistle was blown at or near the post.

To corroborate the testimony of the train crew defendant called four colored persons, Fred Key and his wife, Mattie, Liza Reece and George Reece. Fred Key testified that he lived about 250 yards from the crossing and was in his back yard cutting wood when the collision took place; that he heard the bell and whistle but did not see how far the train was from the crossing at the time. His wife, Mattie, was in the house sitting down with her baby in her lap when she says she heard the whistle blow and at once got up, carried the baby to the door to show it the train and that about the time she got to the door the train hit the car. Liza Reece lives about 200 yards from the crossing, and heard the whistle which caused her to look in that direction. She does not fix definitely the location of the train when she heard it whistle but says that

when she looked she saw the automobile about the time it left the main highway to go across the track and that after the car turned to go across the track it slowed down and she was sure it did stop. The main highway is about 200 feet from the track so that, according to her testimony, the whistle must have been blown some distance from the crossing. George Reece lives about 200 yards from the crossing, and saw the accident. He says he heard the whistle when the train was about 100 yards down the track from the crossing and again that the front wheels of the automobile were nearly to the first rail when the whistle blew.

To sum up the testimony, we disregard that of the plaintiff himself for reasons already stated; Harkness says the bell was not rung nor was the whistle blown until after the collision, but his testimony loses some of its effect when it is considered that he was from one-half to three-quarters of a mile from the crossing and there was apparently nothing to attract his attention until he saw the collision; Gray, who was with Harkness, does not say the signals were not given but says he did not hear them; Cora Hawkins says the signals were not given until after the collision. For the defendant the three members of the train crew are positive that both signals were given at the proper time and place and that the bell was ringing continuously. The testimony of the four colored witnesses tends to show that the proper signals were given before reaching the crossing, although they did not definitely fix the position of the train when they were given.

In considering the testimony of the witnesses called by plaintiff and the colored witnesses called by defendant we must take into consideration the fact that none of them were expecting the arrival of the train and had no reason to notice the signals. The signals could easily have been given and not noticed by them. That is especially true of Harkness and Gray. According to their testimony they were between one-half and three-quarters of a mile from the crossing. According to members of the train crew the whistle was first blown at the whistling post one-quarter of a mile south of the crossing. Harkness and Gray being at least one-half a mile from the crossing and the whistling post being one-quarter of a mile further south, they were at least three-quarters of a mile from the whistling post so that if the whistle was blown at the whistling post it is not likely that these witnesses would have noticed it at that distance in view of the fact that there was no particular reason why they should have noticed it. Harkness says he saw the train strike the automobile and that the bell did not begin ringing until after the collision. It would seem rather strange that the engineer should set the bell to ringing after the collision. The fact is, we think, that the bell was ringing all the while and that Harkness did not notice it until he saw the collision. According to the colored witnesses the train was making a great deal of noise, one of them stating that she heard it about the time it left Collinston, which is two miles away, so that it is not improbable that they did not notice the bell, the sound of which was confused with and probably drowned by the noise of the train.

If we hold that the proper crossing signals were not given we must base that holding upon purely negative testimony, that is, upon the testimony of those who did not hear them. Not only that, to so hold would be, in effect, at least, to say that the three members of the train crew deliberately falsified and for no suggested reason other than that they are employees of the defendant company. The personal character and veracity of these men are not assailed. On the contrary it is shown that they have been entrusted with the operation of defendant's trains for many years. We cannot assume that such men would be willing to perjure themselves to win a law suit for their employer. It is suggested in this case, as it usually is in cases where the members of a railroad crew are called, that they may on account of personal interest be expected to say that the proper signals were given, for to do otherwise might cause them to lose their jobs. But this is an argument which may cut the other way, for it may be said with equal force that for the same reason a plaintiff would be expected to say that the proper signals were not given, for to say otherwise might cause him to lose his case. In the absence of testimony to show or even a suggestion that a plaintiff or the members of a train crew are not worthy of belief, courts cannot disregard the testimony of either merely and solely because the plaintiff has an interest and wants to win his case or that the members of the crew are employees of the defendant company.

Now, unless we disregard altogether the testimony of the members of the train crew and we see no reason for doing so, we must hold that the proper crossing signals were given. It frequently happens that the engineer and the fireman are the only persons in a position to know definitely whether the signals are given. They, of all people, should know, for it is their business to give them. The following quoted from the opinion in the case of Bihm v. N. O. & Mexican R. R. Co., 6 La. App. 655, is pertinent here:

"It was the duty of the engineer and fireman to blow the whistle for each crossing and ring the bell before reaching same; such things become matter of habit with them. People not engaged in the operation of trains but living near crossings over which fast trains daily pass, become so accustomed to the whistling, and the ringing of the bell, that ordinarily, unless purposely listening, they pay no attention to such things and do not consciously hear them."

See Simpkins v. L. R. & N. Co., 5 La. App. 438, Guillot v. L. R. & N. Co., 3 La. App. 541.

The trial judge found that, while not driving the car, plaintiff could not recover because of his own gross negligence which was the main contributing cause of his injury. We shall not comment upon that point further than to say we think his conclusions well founded, as we prefer to rest the case upon our finding that the defendant company was guilty of no negligence.

The judgment is affirmed with all costs.