203 So.2d 780 (1967)
Morton John KAVANAUGH, d. b. a. Kavanaugh Motor Freight Lines, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 10847.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1967.
*781 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
David T. Caldwell, Jonesboro, for appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
This is an action for property damages arising out of a collision between a truck and trailer unit and a locomotive engaged in switching operations in the mill yard of Continental Can Company, Hodge, Louisiana. From a judgment in plaintiff's favor, defendant appealed.
The issues presented for resolution relate to a question of defendant's assured's negligence and of plaintiff's driver's contributory negligence.
The accident occurred about 9:00 p. m. May 14, 1965, at the intersection of a road and a spur track within the mill yard of one of defendant's assureds. Both road and railroad were on private property and were used for the service of the manufacturing plant. The railroad track runs east and west; the road, north and south, thus intersecting at right angles. Plaintiff's truck and trailer combination, loaded with paper products from Continental Can Company's warehouse, was proceeding in a southerly direction. The train, comprised of two diesel units with the rear ends coupled together, with the train crew operating from the second of the engines, was engaged in switching operations involving several cars which were also loaded with paper and paper products from Continental Can Company's warehouse. The warehouse was located at the northeast corner of the intersection at a distance of approximately 12 feet from both road and railroad. The speed of neither truck nor train was excessive. The truck's speed was estimated at 10-15 m. p. h.; that of the train at approximately 5-6 m. p. h.
*782 Though plaintiff's driver was familiar with the railroad crossing and the location of the building adjacent thereto, he neither stopped, looked, nor listened for approaching trains, but heedlessly proceeded to cross the railroad track. When his unit was well upon the track he, for the first time, saw the approaching train at a distance of only 20-30 feet away, whereupon he accelerated his motor in an attempt to complete the crossing before being struck by the locomotive. The fireman, sitting on the north side of the locomotive, the direction from which plaintiff's truck was approaching, saw the truck as it emerged from behind the building and immediately shouted a warning to the engineer, seated on the opposite side of the engine, who instantly applied the brakes but was unable to bring the train to a halt before striking plaintiff's trailer at a point five or six feet from its rear. The trailer was pushed about 40 feet down the track and turned over on its side before the train could be brought to a stop. Plaintiff's driver, while seated in the cab of the truck, was only 6-8 feet from the front of the unit. Hence, inasmuch as the warehouse was located 12 feet from the track, had he stopped after coming from behind the warehouse, he could have seen, had he made even a casual observation, the approach of the train before entering upon the track.
Plaintiff contends that defendant's assured's employees were negligent in not maintaining a proper lookout, giving adequate warning of the train's approach in view of the location of the warehouse and the presence of fog, or providing a flagman or other warning of the train's approach. To the contrary, defendant charges plaintiff's driver with negligence in failing to maintain a proper lookout or to observe the train's approach inasmuch as the train was fully lighted, its bell ringing and its whistle blowingor to stop, look, and listen for the approach of the train before driving upon the tracks, and without first ascertaining that negotiation of the intersection might be made in safety.
We find no merit in plaintiff's contention that the train crew did not maintain a proper lookout or give adequate warning of the train's approach to the crossing. While it is true, due to the presence of the forward locomotive, the engineer was not in position at all times to see plaintiff's truck as it emerged from behind the warehouse, the fireman's position, on the opposite side, permitted him to observe, and he did see, the truck as it came from behind the building. He accordingly shouted an immediate warning to the engineer, who thereupon applied the brakes in an effort to avoid the collision. The fireman was properly and purposely positioned to make this observation in a situation such as this and to warn the engineer. No fault can be attributed to either the fireman or the engineer as the fireman's observation and warning were prompt, as was the engineer's response.
The evidence does not support the charge that warning signals were not given of the train's approach. The bell was ringing and the whistle was blowing constantly from the time the train began moving until the moment of the impact. In this connection, plaintiff contends that these warnings should have begun at the time the locomotive was 300 yards distant from the crossing, as provided by LSA-R.S. 45:561. The answer is quite simple. Three hundred yards did not intervene between the crossing and where the locomotive began its movement. However, the warning signals were given for the entire distance intervening between the time the train started and the time it reached the crossing. This was in full compliance with the requirements of the statute as amended by Act 395 of 1954.
The location of the warehouse and the weather conditions were well known to plaintiff's driver. The locality was well lighted; the headlight on the locomotive was brightly shining directly on the crossing. Nowhere in the record do we find that the truck driver contends his failure to see the train was due to either the location of the building or to presence of the fog.
*783 Nor do we find any merit in the claim that, because of the nearness of the warehouse to the railroad track, constructed to facilitate the loading and unloading of freight, the situation created a "trap." A "trap" on which liability may be based involves a concealed, dangerous condition which, being unknown to a party using the premises, could not have been avoided by reasonable care. Chesser v. Louisville Country Club, Ky., 339 S.W.2d 194, 197 (1960). Plaintiff's driver, as heretofore pointed out, from his frequent use of this crossing, was familiar with the conditions prevailing. No posted sign or warning device could have served to inform him or give him more knowledge of the situation than that which he already knew.
However, with reference to the lack of warning devices or a flagman at the crossing, it seems appropriate at this point to observe that, in the absence of any statute or law imposing liability, we do not think a mere failure to maintain special warning signals or the failure to station a brakeman at a street crossing in itself constitutes negligence. Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19, 22, 23 (La. App., 3d Cir. 1964writ refused); Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138 (La.App., 4th Cir. 1962 cert. denied); Hanks v. Arkansas & Louisiana Missouri Ry. Co., 62 So.2d 139, 143 (La.App., 2d Cir. 1952); Lockhart v. Missouri Pac. R. Co., 153 So. 577, 580 (La.App., 2d Cir., 1934).
Nor is there merit in plaintiff's plea that defendant's assured's agents had the last clear chance to avoid the accident. There is no showing that the engineer or fireman could have, or should have, discovered plaintiff's driver in a position of peril sooner than they did or that by the exercise of due diligence they could have done anything else in their effort to avoid the accident. The evidence supports the contrary view.
From the facts of this case, we cannot find that defendant's assured was guilty of any primary negligence, but assuming arguendo that it was, defendant's alternative plea of contributory negligence on the part of plaintiff's driver would completely bar plaintiff's recovery.
The general rule is that a motorist approaching a railroad crossing must use his senses of sight and hearing for possible oncoming trains before traversing the crossing. Tucker v. Illinois Cent. R. Co., 141 La. 1096, 76 So. 212 (1917); Rachal v. Texas & P. Ry. Co., 61 So.2d 525 (La.App., 2d Cir. 1952); Matthews v. New Orleans Terminal Co., 45 So.2d 547 (La.App., Orl. 1950).
A motorist negotiating a railroad crossing is burdened with the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed, in law, to have seen and heard what he could have seen and heard. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Hymel v. Texas & New Orleans Railroad Company, supra. If the motorist's view of the right of way is obstructed, he must exercise a higher degree of caution to ascertain there are no trains in the vicinity. Bertrand v. Missouri Pacific Railroad Company, supra; Hymel v. Texas & New Orleans Railroad Company, supra; Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App., 3d Cir. 1962cert. denied).
Plaintiff's driver, admittedly proceeding at a slow rate of speed, could have, after coming from behind the building, seen the approaching train and heard its bell ringing and its whistle blowing had he exercised due diligence in stopping, looking, and listening before entering upon the railroad track. Had plaintiff's driver exercised the slightest precaution, he could have averted this accident.
Railroads are not the insurers of motorists and may only be cast in damages for negligence on their part, which we find absent in the instant case. For these reasons, we are constrained to disagree *784 with the conclusion reached by the trial court.
The judgment appealed is accordingly annulled, avoided, reversed, and set aside; and
It is ordered that plaintiff-appellee's demands be, and they are hereby, rejected at his costs.
Reversed and rendered.