Winson GREEN and Carrie Campbell Green

v.

The KANSAS CITY SOUTHERN RAILWAY COMPANY.

No. 18521.

United States District Court, W. D. Louisiana, Shreveport Division.

Sept. 18, 1975.

Frank E. Brown, Jr., Huckaby, Piper & Brown, Shreveport, La., for plaintiffs.

Sam W. Caverlee, Wilkinson, Carmody & Peatross, Shreveport, La., for defendant.

## OPINION

STAGG, District Judge.

Winson and Carrie Green, parents of the deceased minor child, Betty Francis Green, age six, filed suit December 6, 1972 for wrongful death and survivorship damages incurred as a result of a December 21, 1971 accident at the Jefferson Street, Mansfield, Louisiana crossing of the main line of The Kansas City Southern Railway Company. This is a tort suit. Jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount. Louisiana substantive law applies.

At the outset, it is necessary to describe the locality where the accident oc-curred. The defendant's railroad runs in an east-west direction through the City of Mansfield. The track has been in this location for over fifty years. The accident occurred at the Jefferson Street crossing, which is located north of the La. Hwy. 171 crossing in Mansfield. The Jefferson Street crossing is slightly elevated, there being a slight grade leading up to it from both the north and the south. There were no automatic signaling devices at the crossing; however, the crossing was protected on both north and south by standard reflectorized Louisiana "crossbucks". The crossbuck north of the crossing was located 29.5 feet from the rail center. There is a considerable amount of foliage north of the crossing; however, this foliage does not extend to defendant's tracks at the crossing area.

At approximately 7:45 a. m. on December 21, 1971, defendant's train was approaching the Jefferson Street crossing from the west. It was daylight and although the weather had been foggy earlier, whatever fog remained at the time of the accident did not impair vision significantly. Defendant's train consisted of five diesel engine units totaling slightly under 300 feet in length, and 1,577,000 pounds in weight. The train was proceeding at approximately 24 m.p.h., which was within the railroad company's self-imposed speed limit of 35 m.p.h. There was no statute or ordinance controlling the speed of trains at this location.

At approximately the same time, a 1963 Chevrolet automobile, belonging to Lemmie Johnson, was proceeding in a southerly direction on Jefferson Street at a speed of about 25 m.p.h. Mr. Johnson, a neighbor of plaintiffs, was requested by plaintiffs to drive their children to school. Nine-year-old Winfred Green sat in the front passenger seat, his sister Brenda in the left rear seat and six-year-old Betty in the fatal right rear seat of Johnson's automobile. Although there is some testimony that Johnson reduced his speed prior to nego-

tiating the crossing, he did not stop prior to the collision. Johnson continued to move forward until his automobile was struck broadside by the train at the crossing. Betty Green was rendered unconscious immediately and died some 17 hours after the accident, never regaining consciousness.

Plaintiffs contend that defendant railroad company was guilty of negligence in the following respects:

(1) In operating its train as an excessive rate of speed;

(2) In failing to provide a more effective type of warning device at the crossing;

(3) In failing to take extensive precautions to protect the traveling public from an extraordinarily hazardous crossing, in the nature of a trap;

(4) In failing to sound the necessary precautionary warnings as the train approached the crossing and in failing to maintain proper control over its train.

After careful review of the entire proceedings, this Court finds it unnecessary to discuss the first two contentions listed above. These contentions are wholly without merit. The third and fourth contentions, however, deserve consideration.

The first issue to be considered is whether or not this case falls within the "dangerous trap" doctrine as set forth in *McFarland v. Illinois Central Railroad*, 122 So.2d 845 (La.App. 1st Cir. 1960) and *Renz v. Texas & Pacific Railway Company*, 138 So.2d 114 (La.App. 3rd Cir. 1962). This doctrine was best summarized in *Glisson v. Missouri Pacific Railroad Company*, 158 So.2d 875 (La.App. 3rd Cir. 1963) wherein the Court stated:

"Succinctly stated, these cases, and the authorities cited therein, hold that if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train, the railroad company will be held liable, unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warnings or providing signaling devices, etc. The theory of this doctrine is that the railroad may not rely upon the duty of the motorist to stop and look, if the physical circumstances are such that stopping and looking will do the motorist no good."

■ In the *Glisson* case, the Court held the dangerous trap doctrine inapplicable where the motorist, from a position 48 feet from the railroad track, had an unobstructed view of the tracks for a distance of 380 feet. In *Addison v. Kansas City Southern Railway Company*, 170 So.2d 142 (La.App. 2nd Cir. 1964), the Court held that the dangerous trap doctrine did not apply where the motorist, from a position 14 feet 8 inches from the track, had a clear view of the tracks for a least one-quarter of a mile. Thus, it is apparent that the doctrine will not be applied in cases where the motorist can obtain an unimpeded view of a train at an appreciable distance without proceeding on or dangerously near the railroad company's tracks.

■ In the present case, plaintiffs have alleged, and have introduced testimony to the effect that it was impossible to see down the tracks until the front wheels of the automobile were almost on the rails. This Court finds such a contention without merit. There were many photographs introduced in the record during trial both by plaintiffs and defendant. Most of these photographs deal with the site of the accident and the trees and weeds around the site. The most accurate photographs were those introduced by defendant[1].

---

1. The photographs introduced by defendant were taken within 48 hours of the accident,

and there is extensive testimony on the part of both plaintiffs' and defendant's witnesses

These photographs reveal that a motorist, from a position of 25 feet from the railroad track, has an unobstructed view for a distance of several hundred feet; additionally, a motorist some 15 feet from the track has a virtually unobstructed view for one-quarter of a mile. Thus, it is the opinion of this Court that there was no obstruction to view which rendered this crossing unduly hazardous.

Plaintiffs next argue that defendant railroad was negligent in failing to sound the necessary precautionary warnings as the train approached the crossing. Louisiana law requires that a train approaching a crossing must cause either the bell to be sounded continously or blasts of the whistle to be sounded for a distance of 300 yards in advance of the crossing and until the crossing is reached. LSA–R.S. 45:561. Plaintiffs appear to be arguing that defendant failed to give any precautionary warnings, and, in the alternative, even if defendant did sound the warnings, such warnings were not sounded for the statutorily required distance.

Each member of the train crew testified that the usual crossing whistle and bell signals were given several hundred yards in advance of the Jefferson Street crossing. Additionally, one of plaintiffs' witnesses confirmed that he heard the whistle. On the other hand, several of plaintiffs' witnesses, who were in the vicinity of the accident, testified that they did not hear the whistle blow or the bell ring prior to the collision.

■■ The law is settled that positive testimony on a certain issue will prevail over negative testimony where such positive proof is uncontradicted by physical facts. *Bordenave v. Texas & New Orleans R. Co.*, 46 So.2d 525 (La. App. 4th Cir. 1950); *Klaus v. Southern Railway Company*, 107 So.2d 305 (La. App. 4th Cir. 1958). Judge Putnam, in the case of *Kennison v. Missouri Pacific Railroad Company*, 241 F.Supp. 545 (W. D.La.1965), recently stated:

> "Negative testimony that a person did not hear a warning sound or see a warning signal will not prevail over positive and credible testimony that such a warning sign was given and that such a warning signal was displayed or operating."

In the opinion of this Court, warnings were given by defendant railroad.

A more difficult problem is whether or not the warnings given were in compliance with the statute. The defendant has the burden of proving that the whistle was sounded or the bell rung for the full required distance of 300 yards in advance of the crossing. Each member of the crew testified that the bell was ringing and the whistle was blowing from just north of La. Hwy. 171 to the point of collision, a distance of over 1600 feet. The engineer of the train, D. L. Doerge, testified that he turned the bell switch on as the train approached Highway 171. No other hand contact was required by the engineer to enable the bell to continue ringing. Additionally, one of plaintiffs' own witnesses confirmed that the whistle was blowing several crossings from the accident site.

Based on a careful review of the entire proceedings, including the testimony adduced at trial, this Court is convinced that the crew sounded the whistle and rang the bell for several hundred yards preceding the time the train reached the crossing. This being so, this Court finds no violation of Louisiana law in this regard.

■ Finally, plaintiffs assert that defendant railroad was negligent in failing to maintain proper control over its train. The thrust of plaintiffs' argument, in this regard, is that A. W. Perryman, the member of the train crew whose respon-

---

that these photographs accurately represented the crossing area on the day of the accident. On the other hand, the photographs of the crossing area taken and introduced into evidence by plaintiffs were not taken during the winter season, but rather during the spring and summer when foliage growth is greatest.

sibility it was to watch for traffic approaching at crossings, was lax in his duties. Plaintiffs argue that at the moment Perryman first observed the approaching Johnson vehicle, the train was a sufficient distance away from the crossing to have enabled Perryman, had he been alert, to have voiced the proper warnings and to have caused the engineer to stop the train prior to the crossing or to reduce the speed of the train, thus avoiding the collision.

Perryman testified that he observed the Johnson vehicle as it was approaching the crossing. As he observed the car and when he realized it was not going to stop, he shouted his warning and the impact occurred. Doerge, the engineer who operated the brake handle, immediately activated the emergency brake system upon hearing Perryman's warning. The train crew testified that the brake system had been tested immediately prior to the accident and was in good working order, and no other steps could have been taken to halt the engine units.

■ Viewing this issue in the light most favorable to plaintiffs, this Court is unable to find fault on the part of the crew in the operation of defendant's train. A railroad, which is operating its train at a cautious rate of speed, is not under a duty to further reduce its speed or to attempt to halt its train every time a vehicle is observed approaching its crossing. This is not to say, however, that a train crew, or any member thereof, can ignore an approaching vehicle when it is apparent that the vehicle has failed to heed the warnings given by the train crew. However, in the case *sub judice*, Perryman, upon realizing that the Johnson vehicle was not going to stop at the crossing, immediately signaled the engineer to halt the train. The emergency brakes were applied instantaneously, but it was impossible to stop the train prior to the crossing site.[2]

Summarizing, this Court is convinced that the train was traveling at a cautious rate of speed; that the railroad crossing warning device was in compliance with Louisiana law; that this crossing was not extraordinarily hazardous and thus did not require extensive precautions; and that the train crew sounded the statutorily required warnings and maintained proper control over the train. Since plaintiffs have failed to prove any negligence on the part of the defendant, their demands are hereby rejected.

The foregoing shall constitute this Court's findings of fact and conclusions of law. The defendant is hereby ordered to submit to this Court within fifteen (15) days a judgment, approved as to form by the plaintiff, and consistent with the foregoing.

---

2. This Court's findings of fact in this regard bars any application of the last clear chance doctrine as set forth by plaintiffs.