503 So.2d 1158 (1987)
Wilbert LAGRANGE, Plaintiff-Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellee.
No. 86-334.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Morrow and Morrow, Patrick C. Morrow, Opelousas, for plaintiff-appellant.
Dubuisson and Dubuisson, James G. Dubuisson, Opelousas, for defendant-appellee.
Before DOUCET and YELVERTON, JJ., and CULPEPPER, J. Pro. Tem.[*]
*1159 WILLIAM A. CULPEPPER, Judge.
Wilbert Lagrange (hereinafter plaintiff) sued for damages sustained when a train operated by Missouri Pacific Railroad Company (hereinafter defendant) struck the automobile he was driving. From a trial court judgment finding in favor of the defendant and dismissing plaintiff's suit, plaintiff appeals.
The decisive issues are whether the trial judge was clearly wrong in finding as a fact that defendant was free of negligence in (1) failing to sound the train whistle at least 300 yards in advance of the crossing, and/or (2) failing to treat this as an unusually dangerous crossing because of the motorist's restricted view.
At approximately 5:00 P.M. on August 6, 1981, plaintiff was driving his pickup truck in a westerly direction on a parish road in St. Landry Parish at a speed of about 30 miles per hour. It was a clear and sunny day. As he crossed the railroad track marked only with a cross-buck sign, he was struck by defendant's train traveling in a southerly direction at about the same speed. Plaintiff suffered serious personal injuries.
Plaintiff contends first that defendant did not blow the whistle at least 300 yards in advance of the crossing as required by LSA-R.S. 32:168. Several witnesses called by the plaintiff testified that they were nearby and did not hear a whistle blowing prior to the collision. Some of these witnesses also testified that they did not even hear the impact of the crash, although they resided near the accident site.
Plaintiff testified he heard no train whistle or horn. The only sound he remembered was a "rumbling" such as a three wheeler makes. He never saw the train prior to impact, and did not remember whether he slowed down or stopped or looked.
Witnesses on behalf of the defendant testified that they were nearby and heard a whistle blowing prior to the accident. Two witnesses testified that they remembered hearing the whistle blow at least twice before the train approached the crossing.
The crewmen aboard the train testified that they heard the whistle blowing continuously prior to the accident. The engineer testified that he positively remembered blowing the whistle from the time the train passed the whistle board, which was 1,349 feet in advance of the crossing. The fireman and the front brakeman stated that the engineer blew the whistle continuously from the time the train reached the whistle board until the point of impact. The rear brakeman testified that the engineer usually blew the horn even where he was not required, such as at farm crossings, and he remembered that the engineer had been blowing the horn continuously for at least 30 seconds prior to the accident.
It is well established that negative testimony that a person did not hear a warning sign will not prevail over positive and credible testimony that such a warning signal was displayed. Green v. Kansas City Southern Railway Company, 399 F.Supp. 1180 (W.D.La.1975), aff'd, 538 F.2d 897 (5th Cir.1976); Kennison v. Missouri Pacific Railroad Company, 241 F.Supp. 545 (W.D. La.1965); Henderson v. Missouri Pac. R. Co., 15 La.App. 196, 131 So. 586 (La.App. 2 Cir.1930). The testimony of defendant's witnesses and the train crew establishes that the whistle was blown continuously for the required distance as it approached the crossing. In absence of testimony to show that the members of a train crew are not worthy of belief, courts cannot disregard their testimony merely because they were interested parties. Henderson, supra; Glisson v. Missouri Pacific Railroad Company, 246 La. 470, 165 So.2d 289 (1964).
We conclude the evidence is clearly sufficient to support the trial judge's finding of fact that the whistle was sounded the required 300 yards.
Plaintiff contends next that he did not notice the train since his vision was obstructed by trees and brush lining the tracks, which constituted a "dangerous trap" and was a direct cause of the accident.
*1160 The dangerous trap doctrine is a jurisprudentially created rule which states that if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train, the railroad will be held liable, unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warning devices. Glisson, supra.
The evidence shows this is a two lane black-topped parish road running generally east and west in a rural area. The railroad tracks run north and south. Plaintiff was going west and the train south. Thus, the northeast quadrant of the intersection is at issue here.
Photographs and a survey plat by a civil engineer show that in this northeast quadrant, there was a farm road and a soybean field. The only obstruction to plaintiff's view was a row of low bushes and trees along the east side of the railroad right-of-way beginning about 190 feet north of the crossing. Sight distances determined by the civil engineer show that from a position 15 feet from the tracks plaintiff could see 1,200 feet north on the tracks, at 25 feet he could see 731 feet, at 50 feet 418 feet, and at 75 feet 300 feet.
Under Glisson, supra, the test is whether the "view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train". In Glisson the evidence showed that at a distance of 48 feet from the tracks plaintiff could see the train 380 feet away. The court found the crossing not unusually hazardous. In the present case, the evidence shows that at 50 feet plaintiff had an unobstructed view of the tracks for 418 feet. Clearly, he did not have to position himself dangerously near the tracks to see the approaching train.
Moreover, it has been held that the dangerous trap doctrine is inapplicable where the plaintiff, from his frequent use of the crossing, was familiar with the prevailing conditions. Kavanaugh v. Travelers Insurance Company, 203 So.2d 780 (La.App. 2 Cir.1967). In this case, the plaintiff resided only one and one-half miles from the accident site, and was undoubtedly familiar with the obstructions near the intersection. If the motorist's view of the right-of-way is obstructed, he must exercise a higher degree of caution to determine that there are no trains in the vicinity. Kavanaugh, supra; Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19 (La.App. 3 Cir.1964), writ ref'd, 245 La. 1075, 162 So.2d 571 (1964); Hymel v. Texas & New Orleans Railroad Company, 145 So.2d 138 (La.App. 4 Cir.1962). Here, plaintiff did not stop and did not look, as he was required by law to do, and that was the sole cause of the accident.
Plaintiff cites several cases applying the dangerous trap doctrine which he attempts to compare with his case. We find all distinguished on the facts. The Louisiana Supreme Court has stated that each case presenting the issue of a train-car collision should be tried on its own facts and circumstances. Troxlair v. Illinois Central Railroad Company, 291 So.2d 797 (La.App. 4 Cir.1974), writ den., 294 So.2d 834 (La. 1974).
For the foregoing reasons we affirm the judgment of the trial court. All costs are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.