# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1277
## consolidated with CW 04-1341

**CHRISTOPHER HANDY, through his legally
qualified tutrix, BARBARA HANDY and
JONATHAN GAY, Individually**

**VERSUS**

**UNION PACIFIC RAILROAD COMPANY and
RODNEY J. STUTES, JR.**

************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 02-1045
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and J. David Painter,
Judges.

**WRIT DENIED; SUMMARY JUDGMENT AFFIRMED
IN PART; REVERSED IN PART; AND REMANDED.**

Marcus A. Allen, Sr.
Attorney at Law
300 Garfield Street
Lafayette, Louisiana 70501
(337) 289-1762
Counsel for Plaintiffs/Appellants:
    Christopher Handy
    Barbara Handy
    Jonathan Gay

**Elena Arcos**
**Davidson, Meaux, Sonnier & McElligott**
**Post Office Box 2908**
**Lafayette, Louisiana 70502-2908**
**(337) 237-1660**
**Counsel for Defendants/Appellees:**
> **Union Pacific Railroad Company**
> **Rodney J. Stutes, Jr.**

SULLIVAN, Judge.

Plaintiffs, Barbara Handy, as tutrix of her minor son, Christopher Handy, and Jonathan Gay, appeal the dismissal of their suit against Union Pacific Railroad Company and its engineer, Rodney J. Stutes, Jr., on summary judgment. For the following reasons, we find that summary judgment was appropriately granted only on the issue that Plaintiffs' state law excessive speed claims are preempted by federal law. Accordingly, the summary judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

## Factual and Procedural History

On March 18, 2001, Harold Gobert was killed when the pickup truck he was driving collided with a Union Pacific train at the Littel Road crossing in Lawtell, Louisiana. On March 11, 2002, his survivors filed wrongful death and survival actions,[1] alleging that Union Pacific and Mr. Stutes were negligent in failing to sound a warning signal, failing to sound a whistle, failing to keep a proper lookout, and traveling at an excessive rate of speed at a crossing that had defective warning devices and was improperly maintained. Defendants filed a motion for summary judgment on April 20, 2004, which the trial court granted on May 17, 2004, after a hearing in which Plaintiffs' counsel did not appear. On May 24, 2004, Plaintiffs' counsel filed a motion for new trial, contending that service of the rule setting the hearing for the motion for summary judgment was improper. After a hearing on July 19, 2004, the trial court found that service was properly made and denied the motion for new trial. Plaintiffs filed a supervisory writ, seeking annulment of the judgment on the grounds of improper service, and an appeal, seeking reversal of the summary

---

[1]On July 14, 2003, the trial court dismissed the survival action on partial summary judgment, finding no genuine issue of fact that Mr. Gobert did not sustain any pre-impact fear and that he did not regain consciousness after impact.

judgment. On October 19, 2004, in an unpublished ruling, this court ordered the writ application consolidated with this appeal. *Handy v. Union Pacific R.R. Co.*, CW 04-1341 (La.App. 3 Cir. 10/19/04).

**Service**

In their writ application, Plaintiffs argue that the trial court erred in not declaring the motion for summary judgment absolutely null based upon a direct attack on the sheriff's return, in excluding the sheriff's daily log as secondary proof of service, and in determining that service was proper under La.Code Civ.P. art. 1235.

The sheriff's return of the rule indicates that it was served on Plaintiff's counsel, "Marcus Allen," on April 26, 2004, through personal service on "Patrice" at 1:30 p.m. The rule was served by former sheriff's deputy, Felix Zaunbrecher, who had been employed as a civil process server for approximately nineteen years. Mr. Zaunbrecher testified that he filled out the sheriff's return based upon information he received from Mr. Allen's receptionist, Patrice Francis, who also informed him that it was her first day working at Mr. Allen's office. Mr. Zaunbrecher acknowledged that neither Mr. Allen nor Ms. Francis signed the return, but he testified that it was common practice for him to serve rules in that fashion. He also stated that he had a clear recollection of serving this rule because it was unusual for him to continue serving his morning papers in the early afternoon. Mr. Zaunbrecher did acknowledge a discrepancy between the return, which stated that service was made at 1:30 p.m., and the daily log sheet, which indicated service was made at 1:15 p.m.

Ms. Francis testified that she remembered Mr. Zaunbrecher coming in the office that day, which was her first day of work, but that she did not remember

2

receiving any documents from him. In an affidavit filed before the hearing, Ms. Francis stated that the notice of a court date "was <u>not</u> <u>delivered</u> to Mr. Allen or myself" on that day as indicated on the sheriff's return. Ms. Francis described her duties for Mr. Allen as follows: "I answer the phone, take messages, file papers, and that's basically it. When the mail comes through, I open the mail, stamp it, and put it in the in-box for Mr. Allen, and that's it." Ms. Francis denied that she did any typing for Mr. Allen, but, as Defendants point out, the initials "PF" appear on several documents from Mr. Allen's office where a typist's initials would be found. Ms. Francis also denied that she kept any court dates for Mr. Allen, but she testified that, once he entered them in the computer, "then I just make sure it's in my computer also."

Louisiana Code of Civil Procedure Article 1235 provides in part:

> B. Service on an attorney, as a representative of a client, is proper when the attorney's secretary is served in the attorney's office.

> C. For the purposes of this Article "secretary" shall be defined as the person assigned to a particular attorney and who is charged with the performance of that part of the attorney's business concerned with the keeping of records, the sending and receiving of correspondence, and the preparation and monitoring of the attorney's appointments calendar.

Additionally, La.Code Civ.P. art. 1292 (emphasis added) provides:

> *The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law.* He shall sign and return the copy promptly after the service to the clerk of court who issued it. *The return, when received by the clerk, shall form part of the record, and shall be considered prima facie correct.* The court, at any time and upon such terms as are just, may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

3

In concluding that service of the rule was valid, the trial court specifically found that Ms. Francis was Mr. Allen's "secretary" as contemplated by Article 1235, in light of testimony that only one attorney and one employee worked in Mr. Allen's office. The trial court further found that Mr. Zaunbrecher did leave the documents with Ms. Francis sometime between 1:15 and 1:30 p.m. on April 26, 2004, finding this to be consistent with both Mr. Zaunbrecher's and Ms. Francis' testimony. In so doing, the trial court discounted part of Ms. Francis' testimony, finding it "strange" that she testified at the hearing that she did not remember receiving any papers, yet she stated in her affidavit that she "absolutely" recalled that nothing was left. Finally, the trial court found that Mr. Zaunbrecher's filling out the sheriff's return, instead of getting Mr. Allen or Ms. Francis to sign it, was proper, as Article 1292 only requires the sheriff to "endorse" on a copy "the date, place, and method of service and sufficient other data to show service and compliance with the law."

"[T]he burden of persuasion that applies to a party seeking to overcome the rebuttable presumption afforded a completed sheriff's return of service by La.Code of Civ. Proc. art. 1292 is preponderance of the evidence. Accordingly, the party attacking service must prove that, more probably than not, proper service was not made." *Hall v. Folger Coffee Co.*, 03-1734, pp. 6-7 (La. 4/14/04), 874 So.2d 90, 97 (citation omitted). We find no error in the trial court's conclusion that Plaintiffs failed to meet this burden.

**Summary Judgment**

In support of its motion for summary judgment, Union Pacific offered several depositions, including that of the investigating officer, Deputy Eddie Thibodeaux; an eyewitness to the accident, Sam Lloyd, who was directly behind Mr. Gobert's truck;

4

and two witnesses who claim to have heard the train's whistle blow before the accident, Mary Richard and her daughter, Cinderella Guillory. Union Pacific also offered a memorandum summary of the train's event recorder and a printout of the event recorder information, but these documents were not attached to an affidavit or deposition.

Deputy Thibodeaux testified that the crossing was marked with a stop sign and a railroad crossing sign, or a "crossbuck." He recorded the weather as clear that day, and he noted that there were no obstructions that would have impaired Mr. Gobert's view down the track. He determined that the posted track speed was 60 m.p.h., and his report includes statements from the conductor and engineer that the train was traveling about 58 m.p.h. and that the horn and bell were working and sounding. Another deputy, Anthony Andrepont, took a statement from Mr. Lloyd, who indicated that Mr. Gobert did not stop until "it was too late." Based upon this information, Deputy Thibodeaux concluded that the cause of the accident was Mr. Gobert's failure to obey the stop sign and that the conductor or the engineer could not have avoided the accident.

Mr. Lloyd testified that he was directly behind Mr. Gobert's blue pickup truck when he heard the train, which was making a "rumbling noise like a tornado." Because it did not appear that Mr. Gobert was going to stop, Mr. Lloyd began blowing his horn to get Mr. Gobert's attention. Mr. Lloyd saw Mr. Gobert look to his right, but that was not the direction from where the train was coming. By the time Mr. Gobert looked to the left, "it was too late" and the train hit him. According to Mr. Lloyd, the train never blew its horn or whistle before the accident. He acknowledged that, in a written statement, he had previously indicated that he might

5

not have heard the horn because of the excitement, but in his deposition he stated several times that the horn or whistle did not blow. Mr. Lloyd also testified that there was no stop sign at the scene.

Mrs. Richard and her daughter, Ms. Guillory, both testified that, while at Mrs. Richard's house, they heard the train's whistle blow before they heard the impact from the accident. Mrs. Richard, however, estimated that approximately fifteen minutes had elapsed from the sound of the whistle to the impact, or "the lick." Mrs. Richard recalled walking down the road and being informed that someone had died in the accident. Neither Mrs. Richard nor Ms. Guillory went to the scene, and they were not questioned by the investigating officers. They both gave statements to representatives of the railroad two days after accident, on March 20, 2001.

At the hearing on the motion for summary judgment, the trial court noted that the memorandum summary of the event recorder information and the event recorder printout were not connected with a sworn affidavit or a sworn statement. Nonetheless, the trial court allowed defense counsel to introduce those documents into the record, then granted summary judgment in light of Plaintiffs' lack of opposition. On appeal, Plaintiffs argue that the trial court erred in granting summary judgment when some of Defendants' documents lacked sufficient evidentiary quality to support the motion and the remaining items, including the various depositions, clearly revealed material issues of fact.

In *Hargrove v. Missouri Pacific Railroad Co.*, 04-764, p. 2 (La.App. 3 Cir. 12/1/04), 888 So.2d 1111, 1113, this court recently stated:

> Appellate courts review summary judgments *de novo*, applying the same criteria as the district courts in determining the appropriateness of summary judgment. *Richard v. Hall*, 03-1488 (La.4/23/04), 874 So.2d 131. The appellate court must determine whether "the pleadings,

6

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Despite the legislative mandate favoring summary judgments found at La.Code Civ.P. art. 966(A)(2), "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.

In their petition, Plaintiffs allege that Defendants were negligent in failing to sound a warning signal and in failing to sound a whistle. Louisiana Revised Statutes 32:168(A) requires each locomotive engine to be equipped with a bell and a whistle or horn that can be heard at a distance of not less than one quarter of a mile under normal conditions. Under paragraph B of that statute, "any person controlling the motion of an engine on any railroad shall commence sounding the audible signal when such engine is approaching and not less than one quarter of a mile from the place where such railroad crosses any highway." Mr. Lloyd, who was behind Mr. Gobert's truck, testified that the train did not sound a whistle before impact and that he was alerted to its presence by a rumbling noise. Mrs. Richard and Ms. Guillory testified that they heard a whistle before the collision, although Ms. Richard estimated that she heard the whistle approximately fifteen minutes before the impact.

Defendants argue that there is no genuine issue of material fact based upon the jurisprudential rule that positive testimony that a whistle was blown will prevail over negative testimony a whistle was not heard. In *Lagrange v. Missouri Pacific Railroad Co.*, 503 So.2d 1158, 1159 (La.App. 3 Cir. 1987) (emphasis added), the court stated that "negative testimony that a person did not hear a warning sign will not prevail over positive *and credible* testimony that such a warning signal was

displayed." Significantly, *Lagrange* and the other cases cited by Defendants applied this principle after trial on the merits, not on summary judgment. As recognized in *Burk v. Illinois Central Gulf Railroad Co.,* 529 So.2d 515, 519 (La.App. 1 Cir.), *writ denied*, 532 So.2d 179 (La.1988), "The question of whether the train sounded its horn for the required distance or whether [the plaintiff] should have been able to plainly view the train under the prevailing conditions at this railroad crossing are questions of fact to be determined by the jury." Further, as we stated in *Corbello v. Southern Pacific Transportation Co.*, 586 So.2d 1383, 1388 (La.App. 3 Cir.), *writ denied*, 589 So.2d 1052 (La.1991), the trier of fact is entitled to accord the negative testimony whatever value it finds proper, "even to the extent of rejecting the positive testimony to the contrary." Thus, notwithstanding the principle that positive testimony will prevail, the trier of fact must still determine whether that positive testimony is credible. On the record before us, we conclude that a genuine issue of material fact exists as to whether the horn or whistle was blown for the required distance.

Plaintiffs also allege that the train was traveling at an excessive rate of speed. As we recognized in *Hargrove*, 888 So.2d at 1114 (quoting *Anderson v. Wisconsin Central Transportation Co.*, 327 F.Supp.2d 969, 975 (E.D. Wis. 2004)), "a state law claim based on excessive train speed is preempted 'if a train is involved in an accident while traveling under the maximum speed by [49 C.F.R.] § 213.9(a).'" To establish that the train was traveling within federal guidelines, Defendants offered several documents, including the federal timetable setting forth speed limits, the memorandum summary of the event recorder data, and the event recorder printout, that were not attached to any affidavits or other sworn statements, such as depositions. "A document which is not an affidavit or sworn to in any way, or which

8

is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or not there remain genuine issues of material fact." *Premier Rests., Inc. v. Kenner Plaza Shopping Ctr., L.L.C.*, 99-1310, 99-1311, p. 10 (La.App. 5 Cir. 8/29/00), 767 So.2d 927, 932-33. "The requirement that documents be verified or authenticated is not merely a mechanical one of form only. It is based on the fundamental fact that such documents are not self-proving." *Schully v. Hughes*, 00-2605, p. 5 (La.App. 4 Cir. 6/5/02), 820 So.2d 1219, 1222. Notwithstanding the insufficiency of these documents, however, Defendants may still prevail if their remaining documentation is sufficient to preclude a genuine issue of material fact. *Id.*

Deputy Thibodeaux testified that, during his investigation, he determined that the posted speed limit for the train was 60 m.p.h. Attached to Deputy Thibodeaux's police report is a statement, taken by Deputy Andrepont, in which the train's engineer, Mr. Stutes, estimated the train speed to be 57 or 58 m.p.h. as it approached the community of Lawtell. We find that Deputy Thibodeaux's deposition properly authenticates Mr. Stutes' statement as being collected in the course of the investigation and that the statement sufficiently establishes the train speed to be within the posted federal speed limit of 60 m.p.h. In the absence of any opposition from Plaintiffs on this issue, we find that Defendants have demonstrated that there is no genuine issue of material fact that Plaintiffs' claims of excessive train speed are preempted by federal law. Accordingly, summary judgment was properly granted, but only as to this issue.

**Decree**

For the above reasons, Plaintiffs' writ application on the issue of improper service is denied. The summary judgment granted by the trial court is affirmed only as to the issue of federal preemption of state law excessive speed claims, and is reversed as to all other issues. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed two-thirds to Plaintiffs and one third to Defendants.

**WRIT DENIED; SUMMARY JUDGMENT AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**