586 So.2d 1383 (1991)
Paul CORBELLO, et al., Plaintiffs-Appellees,
v.
SOUTHERN PACIFIC TRANSPORTATION CO., Defendant-Appellant.
No. 90-59.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1991.
Writ Denied November 15, 1991.
*1384 Raligh Newman, Lake Charles, for plaintiffs-appellees.
Stockwell, Sievert, Viccellio, Clements & Shaddock, David L. Bateman, Raggio, Cappel, Chozen & Berniard, Thomas L. Raggio, Lake Charles, for defendant-appellant.
Before, STOKER, LABORDE and KNOLL, JJ.
*1385 STOKER, Judge.
Paul and Dorothy Corbello seek damages for wrongful death in this suit. A train owned and operated by Southern Pacific Transportation Co. (defendant) struck the automobile driven by their daughter, Sabrina. Sabrina Corbello died as a result of the collision. The jury apportioned fault among the parties and held defendant had been 75% negligent and that the deceased girl had been 25% negligent. The jury awarded wrongful death damages to each parent in the amount of $250,000 and $75,000 for funeral and related expenses.
In a consolidated suit the jury awarded the sum of $250 to Paul Corbello and his automobile insurer to cover the damages to his automobile.[1]
Defendant appeals the trial court judgment embodying the jury verdict. Plaintiffs answered the appeal. We affirm.

ISSUES
Defendant assigns several errors, the decisive issues of which are: (1) whether the jury was clearly wrong in finding any negligence on the part of defendant; (2) alternatively, whether the jury was clearly wrong in finding that defendant was 75% at fault and Sabrina was 25% at fault; (3) and whether the award of $250,000 per parent was excessive. Plaintiffs urge on appeal that the jury erred in assigning 25% fault to Sabrina and contend that she was guilty of no fault at all.

FACTS
On February 19, 1987, at 4:30 p.m., Sabrina Corbello was driving the family automobile south on Louisiana Highway L-1, in or near Lacassine, Louisiana. A Southern Pacific railroad maintenance crew had been upgrading the track around Highway L-1. That afternoon, the crew removed the barricades across the highway, but failed to re-erect the railroad crossbuck sign on the north side of the tracks. The crossbuck sign was the only device used at the intersection to warn motorists of the presence of railroad tracks. Also, there were several pieces of heavy equipment left on the south side of the tracks near the highway. There was no equipment on the north side of the tracks. As Sabrina crossed the railroad tracks from the north side she was struck by defendant's train, which was travelling west at a speed of approximately forty-five miles per hour. Sabrina was immediately killed.
As a result of this accident, two lawsuits were filed. Paul and Dorothy Corbello sued Southern Pacific Transportation Co., et al, for damages as a result of the death of their daughter. State Farm Mutual Auto. Ins. Co. and Paul Corbello sued Southern Pacific Transportation Co. for damages to the vehicle which was owned by Paul Corbello. The two suits were consolidated for trial before a jury.
The jury returned a verdict in favor of the plaintiffs in both suits holding Southern Pacific 75% at fault. Southern Pacific filed motions for a judgment NOV, a new trial and remittitur which were denied.

OPINION

NEGLIGENCE OF SOUTHERN PACIFIC
Southern Pacific contends on appeal that the jury erred in finding it at fault in the accident. On the facts evidently found by the jury we must disagree.
In this appeal the plaintiffs address three areas of the defendant's arguments: (1) the crossbuck sign being down, (2) the obstruction of Sabrina's view and (3) the failure of the train crew to blow the train whistle as required by law. The speed of the train which was about forty-five miles an hour does not appear to be an issue. We do not know, of course, what factual basis upon *1386 which the jury found both the railroad employees and Sabrina at fault and upon which it based its apportionment of fault. Therefore, we will discuss the respects in which the jury might have found negligence on the part of each.
With regard to Southern Pacific, we confine our consideration to the three issues identified by the plaintiffs listed above.

I.
LSA-R.S. 32:169 requires a railroad crossbuck sign at every place where its railroad tracks intersect a public road or street at grade crossings. The purpose of this statutory requirement is to protect and warn motorists. Bergeron v. Illinois Cent Gulf R. Co., 402 So.2d 184 (La.App. 1st Cir.), writ denied, 404 So.2d 1260 (La.1981). Southern Pacific failed to re-erect the sign after the road blocks were removed. Failure to maintain a crossbuck sign can constitute negligence. However, we find that any such negligence was not a cause-in-fact of the accident in this case. It was established at trial that Sabrina was familiar with the road and knew that the railroad track crossed the road where it did. The absence of the crossbuck sign, which is only a passive warning device, did not make any difference under the circumstances of this case. Sabrina knew the track was there. She did not know that a train was there. See Johnson v. Kansas City Southern R.R. Co., 531 So.2d 773 (La.App. 3d Cir.), writ denied, 534 So.2d 445 (La.1988); Aetna Cas. & Sur. Co. v. Texas & Pacific R.R. Co., 209 So.2d 561 (La.App. 2d Cir.1968).
Therefore, the absence of a crossbuck sign was not a cause-in-fact of the accident and not a basis for Southern Pacific's liability.

II.
In the briefs submitted in this case and in oral argument considerable attention was given to the presence of various pieces of heavy working equipment which the railroad crews had parked on the south side of the tracks. The equipment was on the opposite side of the tracks from the direction of Sabrina's approach. They did not obstruct the view of approaching trains. However, at oral argument plaintiffs counsel argued that the presence of the equipment and the fact the rail crews had been doing maintenance work at the crossing site were significant. These facts, and the fact that the road had been barricaded at sometime, allegedly served to confuse Sabrina and to lead her to believe that no trains were running at the time she approached the crossing. We find no basis at all for such an assumption. In any event, we hardly see how re-erection of the crossbuck sign might have avoided any erroneous conclusions Sabrina may have entertained because of the presence of the equipment on the south side of the track.
The issue of alleged obstruction of Sabrina's view and the role such an obstruction of Sabrina's may have played in causing the accident is a purely factual issue. The issue is hotly contended and is governed by the manifest error rule. Rosell v. ESCO, 549 So.2d 840 (La.1989). The defendant adduced pictorial evidence that Sabrina could have seen at least one thousand feet down the tracks to her left (east); and, had she looked, she would have observed the train approaching in time to stop her vehicle. Plaintiffs introduced evidence to show that trees and bushes obstructed Sabrina's view to the east although it is unclear how far down the track the trees were located.
The view of what Sabrina might have seen must be considered in relationship to the conduct of both the train crew and Sabrina. It is unlikely that the train crew could have realized that Sabrina intended to cross the tracks, heedless of the approaching train, in time to stop. Had Sabrina been aware of the approaching train, she no doubt could have stopped her car timely. Consequently, the issue must be considered (as we do later) in testing the jury's finding that Sabrina was negligent in *1387 the proportion of 25%. As to Southern Pacific, our consideration is not confined to the question of the existence of obstruction by trees and bushes and any duty Southern Pacific may have had to clear the view. Presence of any obstruction would increase the importance of sounding the train whistle a duty we will discuss next.
While we cannot know, of course, what subjective considerations the jury made on the obstruction issue, the jury had the sole responsibility for making a determination on the issue. Rosell v. ESCO, supra. Under the manifest error rule as refined and restated in Rosell, we do not find that we, as an appellate court, are permitted any role in eliminating any negligence concerning the obstruction of view at the crossing site on the part of either Southern Pacific or Sabrina. See footnote two, Rosell v. ESCO.

III.
Finally, we turn to the train engineer's alleged failure to blow the train's whistle to warn Sabrina of the train's approach. Under LSA-R.S. 32:168, a train must, on approaching at grade any street or highway crossing, sound a bell, whistle or horn for a distance of at least three hundred yards from the crossing. The purpose of this statute is to protect motorists who are traversing train crossings. Failure to comply with this statutory duty constitutes negligence. Watson v. Illinois Cent. Gulf R.R., 355 So.2d 1366 (La.App. 1st Cir.), writ denied, 357 So.2d 1168 (La. 1978); Johnson v. Kansas City Southern R.R. Co., supra.
At the trial the members of the Southern Pacific train crew testified positively that the train whistle was sounded timely before the train reached the crossing. Two independent witnesses who were in close proximity to the crossing testified as witnesses for the defendant. Their testimony was positive and supported the testimony of the railroad crew. For the plaintiffs, numerous residents of the area of the crossing testified that the crews operating defendant's trains did not customarily sound the whistle when it approached the crossing.
Defendant's counsel objected to admission of the purely negative testimony of plaintiffs' witnesses to oppose the positive testimony of its own witnesses. In its brief defendant cites Burke v. Illinois Central Gulf Railway Company, 529 So.2d 515 (La.App. 1st Cir.), writ denied 532 So.2d 179 (La.1988), and LaGrange v. Missouri Pacific Railroad Company, 503 So.2d 1158 (La.App. 3d Cir.1987). The negative testimony was undoubtedly highly prejudicial to the most crucial element of Southern Pacific's defense. Its counsel understandably objected to its admission. For precisely the same reason, plaintiffs' counsel understandably urges in the strongest terms that the negative testimony is admissible.
In support of the admissibility of the negative testimony, plaintiffs urge the applicability of Article 406 of the Louisiana Code of Evidence, relating to evidence of habit and routine practice. The article provides:
"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. The evidence may consist of testimony in the form of an opinion or evidence of specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine."
We deem this article authorized the admission of the negative testimony of plaintiffs' witness on the issue of the sounding of the horn. As a legislative expression it must be given effect over the jurisprudence cited on behalf of the defendant. This is particularly true when the text of Article 406 is viewed in light of the Author's Notes pertaining to the article, particularly paragraphs *1388 three, four and five of the notes. Inasmuch as we feel the negative testimony could properly be heard by the jury, the jury was entitled to accord to it whatever value it felt proper, even to the extent of rejecting the positive testimony to the contrary.[2] In view of the fact that the jury answered the jury interrogatories to the effect that Southern Pacific was guilty of fault which was a cause in fact of the accident in the proportion of 75%, we must conclude that the jury found that the whistle was in fact not sounded. We may not disturb the finding.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong" and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra, and cases cited therein.
We do not find the jury's credibility determinations to be clearly wrong in light of the conflicting testimony. Thus, we are compelled to accept the jury's apparent finding that the train did not blow its whistle to warn Sabrina of its approach. We find that Southern Pacific breached its statutory duty to Sabrina, as an approaching motorist. We further find, as did the jury, that this breach was a cause-in-fact of the accident since the whistle would have timely drawn Sabrina's attention to the approaching train.

SABRINA'S NEGLIGENCE
Defendant argues on appeal that the trial court erred in assigning only 25% fault to Sabrina. Plaintiffs contend the jury erred in assigning any fault to Sabrina.
Under LSA-R.S. 32:171, Sabrina had a duty to stop between fifty and fifteen feet from the railroad grade crossing when an approaching train was plainly visible and in hazardous proximity to the crossing. We have already reviewed contested facts concerning the alleged obstruction of view and the visibility which a motorist such as Sabrina may have had. The jury found her at fault. In finding Sabrina at fault, the jury reasonably determined that Sabrina had failed to approach the railroad grade crossing with proper caution. We cannot find that the jury manifestly erred in holding Sabrina at fault in the accident. See Rosell v. ESCO, supra.
Plaintiffs also argue that Sabrina was lulled into a false sense of security by believing the trains were not running because the crossbuck sign was down. We do not find such a belief would be reasonable. The tracks themselves were not blocked. Uncertainty as to whether the trains were running should have increased Sabrina's caution and attentiveness.
We conclude that Sabrina's inattentiveness was a cause-in-fact of the accident and Sabrina was contributorily negligent in not keeping a proper look out for the train. Therefore, we must turn now to a consideration of apportionment of fault under the principles of comparative negligence.

APPORTIONMENT OF FAULT
Defendant and plaintiffs both contend on appeal that the jury erred in holding Southern Pacific 75% at fault and Sabrina 25% at fault.
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985), the supreme court set forth guidelines for the apportionment of fault, as follows:
"In assessing the nature of the conduct of the parties, various factors may influence *1389 the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
469 So.2d at 974.
The question of comparative fault is, like contributory negligence, a matter of fact primarily within the province of a jury. However, a jury's determination of comparative fault should not be affirmed merely because it has a reasonable basis. Mohr v. State Farm Ins. Co., 528 So.2d 144 at 149 (La.1988).
Sabrina's failure to approach the railroad grade crossing with proper caution resulted from inadvertance on her part. She should have kept a proper lookout for trains but failed to. Sabrina was only fifteen years old at the time of the accident. Obviously she did not have a great deal of driving experience. She may have allowed herself to assume, without justification, that no trains were using the tracks because the maintenance crew had been repairing the tracks earlier that day. However, as between a train and an automobile, an automobile is usually better able to stop quickly and avoid an accident.
On the other hand, Southern Pacific had a duty to sound its train whistle for at least three hundred feet before reaching a railroad grade crossing, regardless of whether motorists were visible. Blowing the whistle is intended to avoid this type of accident by drawing the attention of inattentive motorists to the presence of the approaching train. It was an important part of Southern Pacific's employees' job duties since a train cannot stop quickly in order to avoid an accident. We see no extenuating circumstances to excuse the failure to blow the train whistle.
Therefore, we hold that the jury did not clearly err in apportioning fault at 75% to Southern Pacific and 25% to Sabrina Corbello.

EXCESSIVE AWARD
Finally, defendant contends on appeal that the awards of $250,000 wrongful death damages to each parent are excessive.
Although we agree with the defendant railroad "that the sky is not the limit for jury verdicts", we believe that the award of $250,000 per parent to the parents of Sabrina Corbello, although on the high end of the scale, is not excessive. Several witnesses testified to the closeness of Sabrina to both of her parents and to the joy she brought to them as a result of her sweet and dutiful nature. We also examined the testimony of the grief-stricken reaction suffered by the parents as a result of the untimely death of their teenage daughter.
We do not believe the trier of fact abused its discretion in making the award.

CONCLUSION
For the foregoing reasons we affirm the judgment of the trial court. Costs are assessed one-half to defendants and one-half to plaintiffs.
AFFIRMED.
KNOLL, J., concurs and assigns written reasons.
KNOLL, Judge, concurring.
For the following reasons, I respectfully concur.
The majority concludes that the sole cause of the accident was the failure of Southern Pacific to blow the train whistle at the railroad crossing and Sabrina's inattentiveness. The majority does not find the absence of the crossbuck signs and the heavy equipment parked near the crossing *1390 with rails and ties laying on the east side of the road contributed to the cause in fact of the accident, because Sabrina knew the track was there. In my view, I find the failure of erecting the crossbuck signs, the heavy equipment parked near the crossing with rails and ties laying on the east side of the road and the failure to blow the train whistle all contributed to Southern Pacific's fault in the cause in fact of the accident. Knowledge of the tracks is not the issue under the facts of this case, but whether the construction going on at the crossing prevented trains from using the track at that time. The jury could have reasonably found from the evidence that Sabrina was led to believe the trains were not able to use the track at that time. Her father testified that the night before the accident Sabrina and he discussed the railroad crossing and stated: "Yes, sir, we discussed that there was probably no trains passing cause they was [sic] working on the track." In sum, I find that the failure of erecting the crossbuck sign and the heavy equipment parked near the crossing with rails and ties laying on the east side of the road compounded the negligence of Southern Pacific's failure to blow the train whistle. The record fully supports that all of Southern Pacific's negligence rendered this railroad crossing extremely hazardous, which resulted in the death of Sabrina.
NOTES
[1] The consolidated case is State Farm Mutual Auto. Ins. Co., 586 So.2d 1390 (La.App. 3d Cir. 1991), Number 90-60 on the docket of this court of appeal in which we render a separate opinion on this same date.
[2] The author of this opinion reluctantly subscribes to this conclusion being of the opinion that it is inherently unfair. However, the legislative expression is clear and umambiguous and the authorities who wrote in Authors' Notes are eminent in the field of evidence.