STEWART, Judge.
Ralph Richard Antee, Liz M. Antee, Willie O’Neal and George Calvin Lee appeal the judgment of the trial court finding that Southern Pacific Railroad Company had not negligently caused a collision between its train and Ralph Antee’s truck. For the following reasons, we affirm.
FACTS
On the morning of January 1, 1990, Ralph Richard Antee picked up George Calvin Lee, Willie O’Neal and J.D. Daniels and proceeded to work at Centuries Park Funeral Home Cemetery and Florist (“Centuries”), a funeral home and cemetery in Shreveport. The funeral home is located to the’ east of Mansfield Road, which runs north and south. Cemetery Road, a small paved service road, runs east from Mansfield Road to the funeral home. Railroad tracks run parallel to Mansfield Road and cross Cemetery Road in front of the funeral home. The crossing is marked with the standard crossbuck railroad sign.
At the same time that Antee was going east on Cemetery Road, a freight train owned by Southern Pacific Railroad Company (“Southern Pacific”) was proceeding south on the railroad tracks. As Antee drove across the tracks, the train struck Antee’s truck on the driver’s side injuring Antee, Lee, Daniels, and O’Neal.
Antee and his wife, Liz Antee, filed suit against Southern Pacific, William A. Camp, the train operation, Centuries, the City of Shreveport, and the State of Louisiana. Southern Pacific filed cross-claims and sought indemnity from Centuries and Aetna Casualty and Insurance Company (“Aetna”), Centuries’ worker’s compensation carrier, based on a contract in which Centuries agreed to indemnify Southern Pacific for accidents at the Cemetery Road crossing.
The suit by Antee was consolidated with two other suits arising out of the accident. The first is a suit for damages filed by Lee and O’Neal. The defendants in this action are Southern Pacific and Camp. The third suit was filed by Aetna seeking reimbursements from Southern Pacific for the amounts it paid in worker’s compensations benefits to those injured in the accident. The City of Shreveport and the State of Louisiana were dismissed from Antee’s suit on summary judgment.
A bench trial on the merits was held on May 18-22, 1992. At trial, Antee alleged that the train had not blown its horn before reaching the crossing as required by LSA-R.S. 32:168 which in pertinent part requires:
*800 Every railroad company or person owning and operating a railroad in this state ... upon engines approaching at grade any street or highway crossing, whether or not said crossing shall be otherwise protected, shall, for a distance of not less than three hundred yards until the crossing is reached, cause either the bell to be sounded continuously or blasts of the whistle or horn to be sounded....
The trial court found that the train crew had sounded the train’s horn for more than the 300 yards required by LSA-R.S. 32:168. The court also concluded that “even if it is assumed that the train crew did not sound the horn in accordance with [LSA-R.S. 32:168], the plaintiffs are unable to prove that such conduct was or would have been the cause-in-faet” of the accident because Antee and his passengers “were simply inattentive and oblivious to the potential risk” presented by the railroad crossing. Antee, his wife, Lee, and O’Neal appeal the trial court’s judgment. Aetna also appeals putting forth arguments contingent upon a finding on appeal that Southern Pacific was in whole or in part liable. Plaintiffs, O’Neal and Lee, have adopted the arguments of Antee; therefore, for clarity and consistency, we shall refer only to Antee as the appellant.
DISCUSSION
Antee argues that the trial court erred by not finding that Southern Pacific negligently caused the collision between its train and his truck. In order to prevail on a claim of negligence, a plaintiff must prove (1) the defendant had a duty to conform his conduct to a specific standard, (2) the defendant failed to conform his conduct to the appropriate standard, (3) the defendant’s substandard conduct was the cause-in-fact of the plaintiffs injury, (4) the defendant’s substandard conduct was the legal cause of the plaintiffs injury, and (5) actual damages. Roberts v. Benoit, 605 So.2d 1032, 1051 (La.1991). Conduct will be considered a cause in fact of harm if it in any way contributed to the harm. Pastor v. Lafayette Building Assoc., 567 So.2d 793, 795 (La.App. 3d Cir.1990). A trial court’s finding of causation is a matter of fact. Bacle v. Wade, 607 So.2d 927, 933 (La.App. 2d Cir.1992). A reviewing court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved is not whether a trier of fact was right or wrong, but whether the fact-finder’s conclusion was reasonable. Id.
At trial, Camp testified that he blew the train horn at least a quarter of a mile before the crossing as required by law. Gary Carter, an employee of a burial vault company, testified that, while he was waiting in Centuries’ parking lot, he heard the train’s horn blow for about 30-45 seconds before the train hit the truck. Officer Michael Clary, the chief accident investigator for the Shreveport Police Department, took a statement from the brakeman on the train, who said that the horn was blown. On direct examination, Brickley Treece, who lives near the crossing, stated that he did not hear the horn. On cross-examination, he recanted and said that he did hear the train’s horn blowing for at least part of the way down the tracks.
James Hayden, who was working in Centuries’ funeral home, testified that he only heard the horn as it struck Antee’ truck, but was careful to say that the train’s horn “didn’t strike my attention prior to [the train reaching the crossing].” Alan Morgan, who was traveling north on Mansfield Road approximately three hundred yards from the accident, said he never heard the horn blow. Daniels testified that he only heard the horn blow immediately before the collision. Both Lee and O’Neal testified that they never heard the train’s horn blow. Antee testified that he does not remember the accident or any of the events surrounding the accident due to his extensive injuries.
In addition to the testimony adduced at trial, numerous photographs were admitted into evidence which show that Antee would have had a clear view of the train. Particularly noteworthy are a set of photographs, defendants exhibits DS-15, DS-22a, DS-25, and DS-26, taken from the driver’s side of a truck parked in front of the cemetery road crossing and defendants exhibit DS-2, an *801 aerial photograph of the crossing. These photographs reveal that there were no obstructions concealing from view a train coming south on the tracks.
Daniels, O’Neal and Lee agreed that they were late for work at the cemetery. However, their versions as to what occurred in the truck prior to the collision differed. O’Neal testified that he and the others in Antee’s truck were holding a conversation about the pending work assignments at the cemetery. He also stated that Antee was drinking a cup of coffee and smoking a cigarette while he was driving the truck with a manual transmission. Daniels testified that they were not talking but they were listening to a talk show on the radio. He also testified that the heater was on and the windows were up. Lee and O’Neal testified that the windows were only partially rolled up. Lee also denied that the radio was on.
Viewing the record as a whole, ample evidence exists to support the findings of the trial court that the train’s horn blew in accordance with LSA-R.S. 32:168 and that Antee and the other passengers in the truck were inattentive to the oncoming train. As outlined above, there is conflicting testimony about whether the horn was blown. The trial court was presented with at least two permissible views of the evidence concerning the horn and the plaintiffs conduct immediately prior to the collision. Having made a choice of what evidence to believe in both regards, the trial court was not manifestly erroneous or clearly wrong. Stobart supra.
In his brief, Antee meticulously lists every inconsistency of Southern Pacific’s witnesses. He argues that an independent witness, Gary Carter, was in a much better position to hear the horn if it was blown than 'the trial court indicated in its opinion. He contends that these inconsistencies plus the testimony of his witnesses that the horn did not blow prove that the trial court was manifestly erroneous in not finding Southern Pacific liable.
Antee’s arguments invite us to dissect the opinion of the trial court point by point and witness by witness in order to make our own credibility evaluations of the ' witnesses. However, it is axiomatic that, in the course of a trial, inconsistencies will occur in witness testimony. Inconsistent testimony is a frequent result of varied perceptions of events by witnesses and the natural failings of memory. In assessing the credibility of witnesses, it is the duty of the fact-finder to consider inconsistencies as one of the many variables relevant to deciding a contested factual issue. We conclude from the record and the trial court’s reasons for judgment that it was satisfied with the explanation given for many of the inconsistencies pointed out by Antee. The trial court’s determination is reasonable under these circumstances.
In certain situations, documents or objective evidence may so contradict a witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness’ story. In these cases we may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). But where such factors are not present, such as in this case, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. at 845. For these reasons, we find Antee’s arguments to be meritless.
Antee cites Johnson v. Kansas City Southern Railway Co., 531 So.2d 773 (La.App. 3d Cir.1988) and Corbello v. Southern Pacific Transportation, 586 So.2d 1383 (La.App. 3d Cir.1991) as support for his contention that Southern collision cases in which motorists alleged that the trains did not blow their horn prior to colliding with their vehicles as required by LSA-R.S. 32:168. In both cases, the fact-finder found that the train had not blown its horn and in both cases these findings were affirmed by the appellate court. Though these cases are similar to the case at bar, for the reasons previously outlined, the trial court’s determination that Southern Pacific was without fault in causing the accident is not clearly wrong. Antee’s reliance on Corbello and Johnson is misplaced.
*802 CONCLUSION
Sufficient evidence exists to support the trial court’s conclusion that Southern Pacific was not liable for the plaintiffs’ damages because the train’s horn was blown as required by LSA-R.S. 32:168. Sufficient evidence also exists to support the trial court’s conclusion that Antee and the other passengers in the vehicle were inattentive to the dangers presented by the railroad track. We therefore affirm the trial court judgment that Southern Pacific had not negligently caused a collision between its train and An-tee’s truck. Because we affirm the trial court judgment, the remaining issues presented by Aetna and Centuries are preter-mitted. Costs of the appeal are assessed against appellants, Ralph Richard Antee, Liz M. Antee, Willie O’Neal and George Calvin Lee.
AFFIRMED.