758 So.2d 211 (1999)
Kathy Gates WHITEHEAD
v.
The KANSAS CITY SOUTHERN RAILWAY COMPANY, et al.
No. 99-896.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
Writ Denied April 7, 2000.
*214 Henry H. Lemoine, Jr., Pineville, for Kathy Gates Whitehead.
Arthur R. Carmody, Jr., Shreveport, for Kansas City Southern Railway Co., et al.
Brian Mosley, Pineville, for Grant Parish Police Jury.
Allan Dale Smith, Colfax, Elizabeth Sheridan Hardy, Lake Charles, for Shelly Ferguson Moris.
Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX and Judge MICHAEL G. SULLIVAN.
THIBODEAUX, Judge.
Douglas Whitehead was killed in a collision between the eighteen wheel tractor-trailer he was driving and a Kansas City Southern Railway Company (hereinafter "KCS") train. Three lawsuits were filed as a result of the accident, alleging that KCS negligently caused the accident and injuries. After one suit was settled, the jury apportioned seventy percent of the fault to KCS and thirty percent to Mr. Whitehead. After making the appropriate deductions, the trial court awarded damages totaling $665,000 to Kathy Whitehead, the surviving spouse of Douglas Whitehead, and $21,000 to Billy and Julie Williams, d/b/a Jingle Tail Logging Company. KCS appeals. We affirm.

I.

ISSUES
KCS asserts seven assignments of error on appeal:
1. The jury erred in allocating seventy percent fault to KCS and only thirty percent to Douglas Whitehead.
2. The trial court erred in permitting the introduction of evidence of the train conductor's past alcohol use.
3. The trial court erred in permitting the introduction of evidence concerning subsequent remedial measures made by KCS and in not granting a mistrial after the introduction of such evidence.
4. The jury abused its discretion in awarding $300,000 in general damages to Kathy Whitehead for loss of love and affection and for mental anguish.
5. The jury abused its discretion in awarding $650,000 to Kathy Whitehead for loss of past and future income.
6. The jury abused its discretion in awarding $30,000 in damages for loss of business to Billy and Julie Williams.
7. The trial court erred in not granting the Defendants' motion for a directed verdict at the close of the evidence.

II.

FACTS
On February 5, 1997 shortly before 4:00 p.m., Mr. Whitehead was driving north on U.S. Highway 71 in an eighteen wheel tractor-trailer. The tractor-trailer was owned by Billy and Julie Williams, d/b/a Jingle Tail Logging Company, and insured by Northfield Insurance Company (hereinafter "Northfield"). Mr. Whitehead turned left from Hwy. 71 onto Union Grove Cemetery Road (hereinafter "Cemetery Road"), which is a ten foot wide gravel road. Upon completing the westward turn, he attempted to cross the train tracks which traversed Cemetery Road approximately seventy to seventy-five feet from Hwy. 71. Mr. Whitehead was killed while crossing the train tracks when the *215 tractor-trailer he was driving was struck by a southbound KCS train.
As a result of the collision and death, Kathy Whitehead, the surviving spouse, Shelly Morris on behalf of Brandi Whitehead, the deceased's minor daughter, and the Williamses along with their insurer, Northfield, filed suits for damages against KCS, Eugene Jackson, Jr., the train conductor, and the Grant Parish Police Jury (hereinafter "the Police Jury"). Plaintiffs alleged that the Defendants negligently caused the accident by failing to provide adequate warnings of the approaching train and failing to properly maintain the sight line between the intersection and the train tracks. The trial court granted the Police Jury's motion for involuntary dismissal. The minor daughter's claim was amicably settled before trial. The consolidated suits of the remaining plaintiffs were tried to a jury which apportioned fault at thirty percent to Mr. Whitehead and seventy percent to KCS and awarded damages. KCS brought this appeal. We are also rendering judgment in the companion case on this date. See Billy Williams and Julie Williams, d/b/a Jingle Tail Logging Co. and Northfield Ins. Co., 99-987 (La. App. 3 Cir. 12/22/99); ___ So.2d ___, 1999 WL 1259558.

III.

LAW AND DISCUSSION

Standard of Review
Determinations of the existence of injuries and the causation of those injuries are factual and will not be disturbed on appeal unless they are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). A fact finder's selection between permissible views of the evidence cannot be manifestly erroneous. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985). Appellate courts review factual determinations and the assessment of general damages for an abuse of discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). An appellate court may not reverse reasonable findings of fact by a jury even if it is convinced that it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990). Although deference should be accorded to the fact finder, appellate courts have a constitutional duty to review factual determinations. Daye v. General Motors Corp., 97-1653 (La.9/9/98); 720 So.2d 654.

A.

NEGLIGENCE OF THE RAILROAD
In its first assignment of error, KCS alleges that the jury erred in finding it to be seventy percent at fault in causing the accident and injuries. KCS maintains that it fully performed its obligation to warn drivers of the oncoming train and that the right of way was not improperly obstructed. The railroad argues that the jury should have allocated one hundred percent fault to Mr. Whitehead.
Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case. "Under this analysis, a plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." LeJeune v. Union Pac. R.R., 97-1843, p. 6 (La.4/14/98); 712 So.2d 491, 494; Syrie v. Schilhab, 96-1027, p. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-77. Under the duty-risk analysis, all four inquiries must be affirmatively answered for a plaintiff to recover. Id.

Adequacy of Warnings
Crossbuck Signs. Railroads are required to put a crossbuck sign at each place where its railroad tracks intersect *216 public roads or streets at grade crossings. La.R.S. 32:169. These signs provide a passive warning meant to protect motorists and warn them of the presence of the tracks. Corbello v. Southern Pac. Transp. Co., 586 So.2d 1383 (La.App. 3 Cir.), writ denied, 589 So.2d 1052 (La.1991); Bergeron v. Illinois Cent. Gulf R.R. Co., 402 So.2d 184 (La.App. 1 Cir.), writ denied, 404 So.2d 1260 (La.1981). We find that KCS provided the statutorily required crossbuck signs and met its duty to warn motorist of the presence of the tracks. However, this warning is not tantamount to a warning of the approaching train.
Bell, Horn & Whistle. Louisiana Revised Statutes 32:168 requires, in part, that railroad companies equip train engines with bells and whistles or horns that can be heard a distance of 300 yards under normal conditions and that either the bell be sounded continuously or the whistle or horn be blasted for at least 300 yards when approaching a crossing. The failure to comply with the statutory duty to provide audible warnings constitutes negligence. Corbello, 586 So.2d 1383. The Uniform Code of Operating Rules referred to in La.R.S. 32:168 requires that the whistle be sounded for a distance of ¼ mile or 1,320 feet before the crossing. Testimony by KCS employees and the insurance claims adjuster established that KCS policy required train conductors to sound both the bell and the whistle when approaching a crossing.
Trains traveling over 30 mph are required to have an event recorder, the equivalent of an airplane "black box," which records various operational functions of the train. 49 CFR 229.135. The event recorder tape revealed that the horn sounded for five to six seconds immediately before impact. The train engineer and conductor testified that the whistle sounded and the bell rang before the accident. Mr. Calvert Gordon, a witness to the accident, stated that the train did not sound its whistle until just before impact.
In apportioning fault to KCS, the jury could reasonably have determined that the railroad failed to provide the proper advance warnings of the approaching train. Unless manifestly erroneous, appellate courts should not disturb reasonable inferences of fact. Rosell, 549 So.2d 840.

Obstruction of View
KCS further asserts that the jury improperly found that Mr. Whitehead's view of the approaching train was obstructed by trees in the train's right of way.
Plaintiffs introduced oral and pictorial evidence that a motorist approaching the tracks crossing Cemetery Road from Hwy. 71 would be unable to see a train approaching from the north due to the presence of trees in the train's right of way. Plaintiffs assert that had the right of way been cleared of the trees, Mr. Whitehead would have had a better chance of avoiding the collision.
Mr. William Fogarty, the accident reconstructionist for KCS, testified that Mr. Whitehead's first view of the train would have been when he was only seventy-two feet and three seconds from impact with the train.
Whether a driver's view of an approaching train is obstructed is purely factual and reviewed under the manifest error rule. Corbello, 586 So.2d 1383; Rosell, 549 So.2d 840. We find that the jury's finding was not manifestly erroneous.

B.

NEGLIGENCE OF DRIVER
KCS also alleges that the jury erred in assigning only thirty percent fault to Douglas Whitehead and that Mr. Whitehead's failure to stop at the crossing and yield the right of way to the train was the sole cause of the accident. Specifically, KCS argues in brief that since the train sounded its bell and whistle after Mr. Whitehead turned onto Cemetery Road, he had a duty to yield the right of way to the *217 approaching train and that the breach of his duty to exercise due care in yielding to an approaching train was the cause of the accident.
A motorist has an affirmative duty to yield to crossing trains when the train provides the statutorily required warnings of its approach. La.R.S. 32:171. When approaching a train crossing, a motorist is expected to use his sense of sight and hearing to ascertain whether a train is approaching before traversing the crossing and is required to proceed with caution when crossing the tracks. Jones v. Merritt, 92-748 (La.App. 3 Cir. 3/2/94); 633 So.2d 394, writ denied, 94-1236 (La.7/1/94); 639 So.2d 1170. "It is widely accepted that a train engineer has the right to presume that a motorist will remove his or her automobile from any danger of impact with the train when warning signals are given, and only when those warning signals go unheeded should the engineer attempt to stop the train." Goodwyne v. People's Moss Gin, Inc., 96-1340, pp. 6-7 (La.App. 3 Cir. 4/30/97); 694 So.2d 1101, 1005, writ denied, 97-2041 (La.11/21/97); 703 So.2d 1309 (citing Wheat v. New Orleans & N.E. R.R. Co., 245 La. 1099, 163 So.2d 65 (1964)).
Mr. Michael Van Tiem, a KCS project engineer, testified that upon entering the "nonrecovery zone" when approaching a moving train, a motorist traveling at the legal speed limit will be unable to avoid a collision. He explained that the nonrecovery zone at the site of the accident began seventy-two feet east of the track crossing, or just as a motorist turned from Hwy. 71 onto Cemetery Road (since the track is approximately seventy to seventy-five feet from the crossing).
Mr. Archie Burnham, an accident reconstructionist, and Mr. Jim Scott, Plaintiffs' railroad operations expert, testified, in sum, that absent advance warnings of an approaching train, a motorist in a moving vehicle would be unable to avoid a collision once he has entered the nonrecovery zone.
The evidence shows that Mr. Whitehead entered the nonrecovery zone immediately upon turning onto Cemetery Road. Since he had traversed the intersection twice before that day, he was clearly aware of the presence of the tracks and had a duty to approach with caution. However, the jury could reasonably have determined that the inadequate warnings of the train's approach and the obstructed view of the approaching train, coupled with the close proximity of the tracks to the embarkation of the turning, impeded Mr. Whitehead's ability to rely on his sensory perception to detect the train. We find that such a determination does not constitute an unreasonable conclusion.

C.

APPORTIONMENT OF FAULT
In an action for death or loss, the jury should determine the fault of all persons contributing to the injury and a party's recovery should be reduced by his percentage of fault. La.Civ.Code art. 2323. Factors considered in apportioning fault based on a party's conduct include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d 967. Appellate courts give some deference to a fact finder's allocation of fault, making adjustments only if the allocation is clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96); 666 So.2d 607.
Applying the Watson factors to the facts here, we do not find that the apportionment of fault was clearly wrong. Since the record does not preclude a finding that KCS bore the majority of the fault, we will not disturb the jury's allocation of fault. Duncan v. Kansas City Southern Railway *218 Co., 99-232 (La.App. 3 Cir. 11/3/99); 747 So.2d 656.

D.

INTRODUCTION OF EVIDENCE

Alcohol Use
In its second assignment of error, KCS contends that the trial court erred in permitting the Plaintiffs to introduce evidence of the train conductor's prior alcohol use and in disallowing the railroad from introducing evidence of Mr. Whitehead's intoxication at the time of the accident.
Pursuant to a pretrial order issued by the trial court, the parties submitted lists of witnesses to be called at trial and exhibits that were to be introduced. KCS did not list a blood alcohol test as an exhibit.[1] After a KCS consultant referenced the blood alcohol test during a deposition, Plaintiffs filed a motion in limine to exclude evidence of the test at trial. The trial court granted the motion. KCS did not object to the exclusion of the alcohol test evidence, but sought and was granted the right to inquire at trial whether Mr. Whitehead had been drinking prior to the accident. No evidence of alcohol use by Mr. Whitehead was introduced at trial.
The Louisiana Supreme Court resolved the issue of the admissibility of blood alcohol test results as part of a medical record in Judd v. State, Dep't of Transp. & Dev., 95-1052 (La.11/27/95); 663 So.2d 690. The court held for the first time that the results of blood alcohol tests which constituted part of hospital medical records were admissible without the necessity of laying a proper foundation under the medical records exception, La.R.S. 13:3714.
In Owens v. Concordia Elec. Co-op, Inc., 95-1255 (La.App. 3 Cir. 6/25/97); 699 So.2d 434, writs denied, 97-2698 (La.1/9/98); 705 So.2d 1113 and 97-2728, 97-2736 (La.1/9/98); 705 So.2d 1120, defendants filed a motion in limine to admit the results of a driver's blood alcohol test. Plaintiffs responded by filing motions to exclude the evidence on the grounds that the chain of custody was uncertain and the results were unreliable. On supervisory/remedial writs, the Louisiana Supreme Court ruled that evidence of a driver's blood alcohol test was admissible because the issues raised by the plaintiffs went to the weight of the evidence, not its admissibility. Owens v. Concordia Elec. Co-op., Inc., 94-0135 (La.1/19/94); 629 So.2d 1189.
Although blood alcohol content [BAC] test results are admissible, the party seeking to introduce them must first properly present such evidence to the court. Trial courts are authorized to hold pretrial conferences and issue pretrial orders which establish, among other things, the evidence parties plan to introduce at trial. La.Code Civ.P. art. 1551. Failure to identify an exhibit for use at trial precludes its use at trial. Gallow v. Jack Eckerd Corp., 93-461 (La.App. 3 Cir. 1/5/94); 630 So.2d 970, writ denied, 94-0350 (La.3/25/94); 635 So.2d 230.
Opposing counsel may object to the introduction of evidence prior to trial by filing a motion in limine. A party need not make a formal objection at the time a trial court rules on the admissibility of the evidence, but need only make known the action he desires of the court and his grounds therefor. La.Code Civ.P. art. 1635. After ruling evidence inadmissible, the trial court shall permit the party seeking its introduction to proffer the evidence or make a statement as to the nature of the evidence. La.Code Civ.P. art. 1636. The trial court's rulings on the admissibility of evidence are reviewable on appeal without the necessity of further formality. Id. However, if a party fails to proffer excluded evidence, an appellate court cannot analyze it and its admissibility, and *219 that party is precluded from complaining of the excluded testimony. Broussard v. Olin Corp., 546 So.2d 1301 (La.App. 3 Cir. 1989). Additionally, the trial court has vast discretion in deciding the admissibility of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion. O'Neill v. Thibodeaux, 97-1065 (La.App. 3 Cir. 3/6/98); 709 So.2d 962.
After the trial court ruled the evidence of the blood alcohol test inadmissible, KCS stated, "I anticipated that" and later, "I'm not even objecting to the Court's ruling on that." Our review of the record reveals that KCS neither identified the blood alcohol test as an exhibit, objected to the trial court's ruling on the exclusion of the test, proffered the test to preserve appeal, nor sought writs on the ruling. Although medical records of blood alcohol test results are admissible, a party must first properly seek their introduction. Absent the prerequisites for introducing the evidence, its exclusion is not properly before us for review.
KCS further contends that the trial court erred in allowing Plaintiffs to introduce evidence of the train conductor's past alcohol use. During cross-examination, the Plaintiffs elicited testimony from the train conductor, Mr. Eugene Jackson, Jr., that he had returned to work shortly before the accident after a suspension for violating KCS drug and alcohol rules. This information was supplied to Plaintiffs with Mr. Jackson's employment records. Although Plaintiffs included the pertinent employment records on its exhibit list, KCS did not file a pretrial motion to exclude evidence of the conductor's past alcohol use. Rather, KCS objected to the relevancy and materiality of the evidence at trial.
"Louisiana jurisprudence holds that an appellate court must place great weight on a trial court's ruling of relevancy of evidence and should not reverse such a ruling in the absence of a clear abuse of discretion." Krampe v. Krampe, 625 So.2d 383, 386 (La.App. 3 Cir.1993), writ denied, 93-2763 (La.1/7/94); 630 So.2d 781. After a careful review of the record, we find no abuse of discretion in the trial court's ruling.

Subsequent Remedial Measures & Mistrial
KCS asserts as its third assignment of error that the trial court erred in permitting the Plaintiffs to introduce evidence of subsequent remedial measures by the railroad in clearing the trees which obstructed the view from the train crossing. Defendants argue in brief that the trial court erred in not granting a mistrial after this evidence was presented to the jury.
La.Code Evid. art. 407 provides:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.
At trial, Ms. Hardy, Plaintiffs' counsel, stated that she wanted to ask about the current conditions at the crossing. Mr. Carmody, Defendants' counsel, objected and the trial court sustained the objection. Ms. Hardy then asked the witness, "Were those trees still there?" Mr. Carmody again objected with the trial court again sustaining the objection before the question was answered.
We find that the evidence of subsequent remedial measures was never actually presented to the jury. Consequently, we find it unnecessary to consider whether the presentation of this evidence would have warranted a mistrial.

*220 E.

DAMAGES
The jury awarded the following general and special damages to Mrs. Whitehead:

General Damages:
A. Loss of love and affection $ 100,000
B. Mental anguish and grief $ 100,000
Special Damages:
A. Past lost wages $ 50,000
B. Future lost wages $ 600,000
C. Loss of services and support $ 100,000

The total damages award of $950,000 was reduced by the portion of fault allocated to Mr. Whitehead (thirty percent). Therefore, Mrs. Whitehead was awarded $665,000.

General Damages
KCS contends that the general damages award of $300,000 to Mrs. Whitehead for loss of love and affection was excessive and should be reduced.
An appellate court should only disturb an award of general damages "when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances." Youn, 623 So.2d at 1261. Appellate courts may disturb an award of damages only after determining that the trial court abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Damages for a loss of consortium include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity. Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.7/1/97); 696 So.2d 569. The closeness of the family relationship is also considered in making the award. Mathieu v. State, Dep't of Transp. & Dev., 598 So.2d 676 (La.App. 3 Cir.), writ denied, 600 So.2d 665 (La.1992). Under the particular facts of this case, we find that a reasonable finder of fact could award $300,000 for loss of love and affection.
KCS refers us to other cases in which the court evaluated damages awards to determine a median award. See, e.g., Fruge v. State, Dep't of Transp. & Dev., 536 So.2d 745 (La.App. 3 Cir.1988), writ denied, 538 So.2d 593 (La.1989). Since the jury was not unreasonable in making its award to this Plaintiff under the particular facts of this case, we need not engage in a comparison of prior awards in superficially similar cases. Landry v. Clement, 97-852 (La.App. 3 Cir. 4/15/98); 711 So.2d 829, writs denied, 98-1281, 98-1331 (La.6/26/98); 719 So.2d 1061.

Special Damages Award to Mrs. Whitehead
Next, KCS asserts that the special damages award of $650,000 award for loss of earnings was excessive, not supported by the record and, therefore, should be reduced.
Special damages, which are those damages that can be established to a reasonable mathematical certainty, include awards for past and future lost earnings. Myers v. Broussard, 96-1634 (La.App. 3 Cir. 5/21/97); 696 So.2d 88. To merit an award for loss of earnings, a plaintiff must prove a factual basis for the award. Id; Breaux v. Wal-Mart Stores, Inc., 93-1035 (La.App. 3 Cir. 4/6/94); 635 So.2d 667, writ denied, 94-1098 (La.6/24/94); 640 So.2d 1347.
Dr. Charles Bettinger, Plaintiffs' economist, testified that the amount of past lost wages was $51,234 and future lost wages was $764,409 after discount. This evidence was uncontroverted. Given the evidence, we find that the jury did not abuse its discretion in making the award and, therefore, decline to disturb it.

Special Damages

Economic Loss of Truck Owners
The jury awarded $30,000 to Billy and Julie Williams, d/b/a Jingle Tail Logging *221 Company for economic loss occasioned by the destruction of the tractor-trailer. KCS asserts that the jury erred in making this award because the Williamses received compensation for the loss of the truck from their insurance company and because they failed to either prove or mitigate their damages for loss of business.
Washington v. Lake City Beverage, Inc., 352 So.2d 717, 722 (La.App. 3 Cir.1977), writ denied, 354 So.2d 1050 (La.1978) set forth the prevailing rule in this circuit concerning the loss of use of a vehicle:
Generally, damages for loss of the use of a vehicle (or for the rental of another) are recoverable. However, that rule is subject to the following reservation. In those cases in which the wrecked vehicle is totally destroyed or its repair is not economically feasible, those damages are recoverable only for a reasonable time, that period in which the owner becomes aware of the situation and secures a replacement therefor.
When a plaintiff knows immediately after the accident that his vehicle is a total loss, no damages for loss of its use are recoverable beyond the reasonable time it would take to purchase a replacement. Menard v. Prejean, 374 So.2d 1275 (La.App. 3 Cir.1979). Under this principle, the Williamses may only recover loss of use damages for a "reasonable time." Reasonableness is determined by the particular facts of the case.
Mr. Williams testified that with the tractor-trailer operational, his business grossed approximately $1200 per day with expenses of $115 per day and $90$110 per day for the driver. Accordingly, the net daily income from the truck was $975.
It could be inferred from the evidence that it would cost approximately $60,000 to purchase a replacement truck. Mr. Williams explained that although Northfield dispersed $56,000 for the destruction of the tractor-trailer, that money was paid to the bank which held the note on the truck. He stated that he was unable to purchase a new truck until nearly sixty days after the accident. Thus, the jury's award of damages for loss of use of the tractor-trailer was based on the income of $975 per day for working days over a sixty day period. This award was reduced by Mr. Whitehead's fault to $21,000.
We have held that two months or sixty days is a reasonable time for which a plaintiff may recover damages for the loss of use of a vehicle. See Roberts v. Chargois, 98-1073 (La.App. 3 Cir. 2/24/99); 736 So.2d 910; Thomas v. Champion Ins. Co., 603 So.2d 765 (La.App. 3 Cir.1992); Meshell v. Insurance Co. of North America, 416 So.2d 1383 (La.App. 3 Cir.1982). Given the total destruction of the tractor-trailer and the cost of a replacement, the jury did not abuse its discretion in awarding the Williamses $30,000 for the loss of business income for sixty days.
We now consider whether the Williamses should be denied recovery for a failure to mitigate their damages. "The doctrine of avoidable consequences bars recovery of those damages which occurred after the initial injury and which might have been averted by reasonable conduct on the part of the plaintiff." Philippe v. Browning Arms Co., 395 So.2d 310, 319 n. 12 (La.1980) (citing W. Prosser, Law of Torts § 65 at 422 (4th ed.1971)). The standard is that of a reasonable man under the circumstances. Id. Thus, an injured plaintiff's duty to mitigate his damages requires only that he take reasonable steps to minimize the consequences of the injury. Vizinat v. Transcontinental Gas Pipeline Corp., 552 So.2d 1237 (La.App. 3 Cir.1989), writ denied, 558 So.2d 586 (La. 1990). Since, under the particular facts of this case, we find the Williamses replaced the lost vehicle within a reasonable time, we find they had no additional duty to further mitigate their damages.

F.

DIRECTED VERDICT/INVOLUNTARY DISMISSAL
In its final assignment of error, KCS asserts that the trial court erred in not *222 granting its motion for a directed verdict at the close of the evidence.
Article 1810 of the Louisiana Code of Civil Procedure provides, in part:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made.... A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting the motion for a directed verdict is effective without any assent of the jury.
(Emphasis added). A motion for a directed verdict presupposes that the issue on which the motion is sought will be presented to the jury. The trial judge may grant the motion if, after weighing all evidentiary inferences in the light most favorable to the opponent, the facts and inferences clearly show that a reasonable jury could not reach a contrary verdict. Citgo Petroleum Corp. v. Yeargin, Inc., 95-1574 (La.App. 3 Cir. 2/19/97); 690 So.2d 154, writs denied, 97-1223 (La.9/19/97); 701 So.2d 169 and 97-1245 (La.9/19/97); 701 So.2d 170.
Although KCS moved for a directed verdict, it did not state the grounds therefor. After thoroughly reviewing the record, we find that based upon the evidence and inferences, a reasonable jury could find against KCS. Thus, KCS's position is meritless.

IV.

CONCLUSION
For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed to Kansas City Southern Railway.
AFFIRMED.
NOTES
[1] A blood alcohol test had been conducted on the deceased during an autopsy at the Jefferson Forensic Laboratory following the accident. Defendants allege in their brief that the report showed that Mr. Whitehead's blood had a "significant alcohol content."